## FIRST NAT. BUILDING CO. *v.* VANDENBERG.

No. 763.    Opinion Filed November 14, 1911.

(119 Pac. 224.)

1. **DAMAGES—Elements—Breach of Building Contract.** Where a clause of a building contract which provides that under certain circumstances the owner shall be at liberty to terminate the employment of the contractor and take possession of the building for the purpose of completing it, is violated by the owner by terminating the employment of the contractor and entering into possession without right, the primary damage, where the contractor elects to go for damages for breach of contract, is the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and services, and if he chooses to claim for anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed.

2. **SAME—Action of Contractor—Evidence—Books.** In an action by the contractor to recover damages from the owner upon the above theory, the contractor's books of original entries would be admissible and competent evidence to prove the work done and material furnished and the value thereof.

3. **EVIDENCE—Admissibility of Books.** To justify the admission of a party's books of account on his own behalf, it is incumbent upon him to show by proper evidence that the record of the transactions is a faithful and honest one.

4. **SAME—Verification by Bookkeeper.** Entries in a book of accounts kept by a bookkeeper employed for that purpose must be verified by the bookkeeper, if alive and accessible.

5. **SAME—Admissibility of Ledgers.** A ledger is a book of accounts in which are collected and arranged, each under its appropriate head, the various transactions scattered throughout the party's journal or day book, and is therefore not a book of original entries within the rule.

6. **DAMAGES—Anticipated Profits—Evidence.** Under the circumstances of this case, the breach of the original contract will not entitle the plaintiff to recover as anticipated profits the gains and profits of subcontracts entered into by him as preparatory and subsidiary to the fulfillment of the principal contract.

(Syllabus by the Court.)

*Error From District Court, Creek County; John Caruthers, Judge.*

Action by Henry J. Vandenberg against the First National Building Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Dale & Bierer, D. L. Sleeper, Carl C. Magee,* and *Martin, Rice & Lyons,* for plaintiff in error.

*Poe, Biddison & Campbell, McDougal & Walker,* and *L. O. Lytle,* for defendant in error.

KANE, J. This was a suit commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover damages for the breach of a building contract and to foreclose a mechanic's lien in connection therewith. The plaintiff was the contractor and the defendant the owner of the proposed building, and hereafter they will be so designated. It seems that sometime during the progress of the work the owner exercised a privilege conferred upon it by article 5 of the contract, which reads as follows:

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architect, the owner shall be at liberty, after five (5) days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said 'work and to enter upon the premises and take possession, for the purpose of completing the work included under this contract of all materials, tools, and appliances thereon, and to employ any other person, or persons, to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any

further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

The contractor alleged, in substance, that the owner, acting in collusion with the architect, fraudulently, corruptly, and in violation of the terms of said contract, and without giving him any notice, and without any default on his part, forcibly took charge of said building and the construction of same, and notified said contractor that it had terminated said contract, thereby causing the contractor damage in the sum of $8,617.17 for labor and material furnished and used by him in the construction of said building; by loss of prospective profits, in the sum of $12,-015.17; and he prayed that he be given judgment for the sum of $10,000, or so much thereof as might be necessary to satisfy all claims or demands made against plaintiff by reason of certain subcontracts which he had made and entered into with various persons for the furnishing of materials and labor in the construction of said building, and that he be decreed a lien upon the lots upon which said building was erected to secure the payment of said judgment.

The answer of the defendant admitted the execution of the contract, but denied that there was any fraud or collusion with the architect. There were other allegations to the effect that the defendant acted in accordance with the terms of said contract between the contractor and the owner; that said owner took charge of said work and materials and appliances thereon and proceeded to employ properly skilled workmen and to purchase proper and suitable materials, and proceeded with the construction of said building in accordance with the plans and specifica-

tions of said work; that it provided whatever labor and material essential to the work that it was bound to furnish under said contract between plaintiff and defendant in such a manner and at such times as not to delay the progress of the work and fully in accordance with the terms of said contract; that it paid plaintiff all estimates made upon the said work by the said architect at the time and in amounts specified by said estimates, and thereby paid plaintiff the sum of $16,349.75, being the whole amount due plaintiff at the time plaintiff abandoned said work, and up to and including the present time.

After the issues were joined, the court referred the cause to a master in chancery, who found that the contractor was entitled to recover against the owner for labor and materials furnished up to the time of the forfeiture of the contract, in the sum of $5,617.21; for certain materials purchased by the contractor which had not been paid for by him and which were taken possession of by the owner and used in the construction of said building, in the sum of $6,739.29; for certain materials belonging to the contractor which the owner took possession of and appropriated to its own use, in the sum of $297.20; and for anticipated profits which the contractor would have been entitled to if he had completed the building, in the sum of $5,000. The order of reference was made by the court upon its own motion and the report returned prior to statehood. After statehood the report was approved by the court in all particulars and judgment rendered in accordance with the recommendations of the master. To reverse this judgment this proceeding in error was commenced.

Several assignments of error are directed to alleged error of the court in referring the cause to the master without the consent of the owner, and error of the master based upon rulings during the trial that involved the question of abuse of discretion on his part. As the case will have to be reversed upon questions that involve its merits, and as those errors are such as will probably not occur again upon a new trial, we will not further notice them.

Upon the question of the breach of the contract, the master found that:

"The defendant First National Building Company, the owner of the building, was guilty of a breach of the contract made with plaintiff contractor, for the following reasons: 1st. Because it failed to make and pay the estimates at the time, in the manner and for the amounts provided for by the terms of the contract. 2nd. Because the defendant building company terminated the contract with the plaintiff contractor, and took possession of the building without right. 3rd. Because the plaintiff contractor had substantially complied with the terms of the contract, up to the date that the defendant took possession of the building, and the reasons assigned by the architect for declaring a forfeiture of the contract were untrue and known to be so by the architect."

We believe this finding was supported by sufficient evidence. Under such a state of facts the primary damage is the amount of the contractor's loss, and this loss must consist of two heads or classes of damage—actual outlay and anticipated profits. But failure to prove profits will not prevent the party from recovering his loss and outlay and expenditures. If he goes also for profits they will be measured by the difference between the cost of doing the work and what he was to receive for it. *United States v. Speed,* 8 Wall. 77. Speaking of those two heads or classes of damages, in *United States v. Behan,* 110 U. S. 339, Mr. Justice Bradley says:

"The two heads of damage are distinct, though closely related. When profits are sought, a recovery for outlay is included and something more. That something more is the profits. If the outlay equals or exceeds the amount to be received, of course there can be no profits.

"When a party injured by the stoppage of a contract elects to rescind it, then, it is true, he cannot recover any damages for a breach of the contract, either for outlay or for loss of profits; he recovers the value of his services actually performed as upon a *quantum meruit*. There is then no question of losses or profits. But when he elects to go for damages for the breach of the contract, the first and most obvious damage to be shown is, the amount which he has been induced to expend on the faith of the contract, including a fair allowance for his own time and

services.   If he chooses to go further and claims for the loss of anticipated profits, he may do so, subject to the rules of law as to the character of profits which may be thus claimed."

We may concede, for the purposes of this case, that the rule of damage adopted by the master is correct, yet we find that the class of evidence offered to sustain the various items found due was entirely inadequate to support his findings.   The report discloses that the findings of fact in relation to the amount of damage sustained on account of labor and materials furnished have the following testimony for their basis:   (The contractor was being examined upon direct examination.)

"Q.   You may examine this book that I now hand you and state to the court what it is.   A.   Ledger account of the expense of the National Bank Building Company's building at Tulsa, Indian Territory.   Q. You may state to the court whether the expense as shown in the items of that account has been paid for by you.   A. Yes, sir.   (Objected to and ask that it be stricken out.)   Q. Mr. Vandenberg, whose book is this?   A. It is mine. Q. Under whose instructions has this book been kept?   A. Mine. Q. You may state to the court whether the items as shown in this book are and were true and correct at the time they were entered in the book.   A. They were.   Q. Examine exhibit D to the complaint, filed in this court, and you may state whether or not you have compared the items as shown in said exhibit D with the original entries in your ledger.   (Objected to; incompetent, and immaterial, and no proper foundation laid.)   A. I have.   Q. Mr. Vandenberg, you say that you have compared the items in your ledger, the original entries, with this exhibit D attached to the bill of complaint?   A. I have.   Q. How do they compare?   (Objected to.)   Q. We here and now offer the ledger in evidence.   (Objected to; incompetent, irrelevant, and immaterial, and no proper foundation laid.   Ledger admitted in evidence, subject to the objection, and marked 'Plaintiff's Exhibit F.')"

There was other evidence to the effect that the ledger was kept by the bookkeeper of the contractor.   Counsel for the owner contend that the ledger account could not be used to prove the

value of the labor and material furnished, for the reason that, were it otherwise competent, no foundation has been laid for its introduction, and a finding based upon it was therefore wholly unauthorized. In *McDaniel v. Webster,* 2 Houst. (Del.) 305, the rule governing the admission of books of original entries in cases like this is stated as follows:

"If the work was done under a special agreement such as has been stated, the plaintiff's book of original entries, with the charges and sums contained in his account, was not proper or sufficient evidence to prove the value of his services, or work done and material furnished by him in building the mill, for in that case, the plaintiff would be confined to his special contract, and could only charge and recover in strict accordance with the terms of it. But if the work was not performed and the materials were not supplied under any special agreement, or if there was originally a special agreement between the parties in regard to the matter, under which it was commenced and prosecuted as far as it was performed by the plaintiff, but which special contract was afterward rescinded or abandoned by reason of the misconduct of the defendant in unreasonably interfering with or interrupting the regular prosecution of the work, the plaintiff would then, in either case, be entitled to recover on the common counts for his work and the materials furnished, as far as he had proceeded with it, without any reference to the special agreement, the same as if none had ever been entered into by him; and in either of those events, we consider, and rule, that his book of original entries would be admissible and competent evidence to go to the jury under our statute, to prove the work done, and materials furnished, and the value of them."

Applying the rule above laid down to the case at bar, we take it that books of original entries of the contractor would have been admissible upon proper identification and verification.

"To justify the admission of a party's books of account on his own behalf, it is incumbent upon him to show by proper evidence that the record of the transactions is a faithful and honest one." (2 Enc. of Evidence, page 629; cases from Alabama, Arkansas, Illinois, Mississippi, New York, Ohio, and Texas are cited in support of the text.)

The rule generally, and the one applicable in the case at bar, is that entries in a book of accounts kept by a bookkeeper employed for that purpose must be verified by the bookkeeper, if alive and accessible. *Railway Company v. Henderson,* 57 Ark. 402. This is the rule in this jurisdiction at the present time. *M., K. & T. Ry. Co. v. Walker,* 27 Okla. 849, 113 Pac. 907. Even treating the book offered as a book of original entries, it is quite clear that it was not properly admissible in evidence under the rule above laid down. A ledger is a book of accounts in which are collected and arranged, each under its appropriate head, the various transactions scattered throughout the party's journal or day book, and is, therefore, not a book of original entries within the rule. 2 Enc. of Evidence, p. 623. Treating the book introduced as a ledger—and that is what the contractor designated it in his testimony—there was an additional ground upon which objections to its introduction ought to have been sustained. With this book excluded, the court finds it impossible to determine even approximately the damage, if any, suffered by the contractor for labor and material up to the time the defendant took possession of the building, for which the master allowed $5,617.21. This book also forms the groundwork for the findings of the master as to the amount of damage due the contractor for materials purchased by him which had not been paid for, but which were taken possession of by the defendant and used in the construction of said building, for which he allowed the sum of $6,739.29. Without considering the ledger the court finds it impossible to arrive at any intelligent conclusion on that item of damage, and by consulting it, it is quite apparent that some of the items allowed under the second head were also included and allowed under the first, thus constituting a double charge against the owner to the amount of several thousand dollars.

The sum of $5,000 for anticipated profits was also based upon incompetent evidence. The contractor attempted to show

what his profits would have been, had he been permitted to complete the building, by showing the cost of construction to him based on subcontracts that he had entered into for the greater portion of the material and labor, and then attempted to show the reasonable cost to him for whatever material and labor he had not subcontracted. We do not believe that the subcontracts constitute a proper basis for proof of the loss of anticipated profits. The principal case on this subject is *Masterson v. Mayor & Smith, Etc., of Brooklyn,* 7 Hill (N. Y.) 61. In that case the contractor and owner entered into a contract for the erection of a certain building. The contractor entered into contracts with other parties to do a portion of the work and furnish certain materials. These subcontracts were used in evidence to show the amount of profits plaintiff would have made. They were admitted by the lower court, which action was held to be erroneous by the appellate court. In discussing the question, the appellate court said:

"It will be seen that we have laid altogether out of view the sub-contract of Kain and Morgan, and all others that may have been entered into by the plaintiffs as preparatory and subsidiary to the fulfilment of the principal one with the defendants. Indeed, I am unable to comprehend how these can be taken into the account, or become the subject matter of consideration at all, in settling the amount of damages to be recovered for a breach of the principal contract. The defendants had no control over or participation in the making of the sub-contracts, and are certainly not to be compelled to assume them if improvidently entered into. On the other hand, if they were made so as to secure great advantages to the plaintiffs, surely the defendants are not entitled to the gains which might be realized from them. In any aspect, therefore, these sub-contracts present a most unfit as well as unsatisfactory basis upon which to estimate the real damages and loss occasioned by the default of the defendants. The idea of assuming that the plaintiffs were necessarily compelled to break all the sub-contracts, as a consequence of the breach of the principal one, and that the damages to which they may thus be subjected ought to enter in the estimate of the amount recoverable against the defendants, is too hypothetical and remote to lead to any safe or equitable result. * * *

The constituent elements of the cost should be ascertained from sound and reliable sources; from practical men, having experience in the particular department of labor to which the contract relates. It is a very easy matter to figure out large profits upon· paper; but it will.be found that these, in a great majority of the cases, become seriously reduced when subjected to the contingencies and hazards incident to actual performance. A jury .should scrutinize with care and watchfulness any speculative or conjectural account of the cost of furnishing the article that would result in a very unequal bargain between the parties, by which the gains and benefits, or, in other words, the measure of damages against the defendants, are unreasonably enhanced. They should not overlook the risks and contingencies which are almost inseparable from the execution of contracts like the one in question, and which increase the expense independently of the outlays in labor and capital.

"Beardley, J. The circuit judge clearly erred in that part of his charge to the jury which related to the contract of the plaintiffs with Kain & Morgan. No damages are allowable on account of this contract, nor am I able to see how it can be regarded as relevant evidence upon any disputed point connected with the amount for which the defendants are liable."

Other cases in point are *Story et al. v. New York & Harlem R. R. Co.*, 6 N. Y. 85; *Devlin v. Mayor et al. of the City of N. Y.*, 63 N. Y. 8; *United States v. Speed*, 8 Wall. 77; *Hinckley v. Pittsburg Bessemer Steel Co.*, 121 U. S. 264; and other authorities cited in 13 Cyc. 55, where the doctrine that "a breach of the original contract will not entitle the plaintiff to recover as damages the gains or profits of collateral enterprises or subcontracts into which he has been induced to enter," is approved upon the ground that such profits or gains are entirely too speculative and contingent, and not the natural and probable consequence of the original breach. The two United States Supreme Court cases last above cited cite with approval *Masterson v. Mayor, supra,* and they and that class of cases differ from *Roehm v. Harst,* 178 U. S. 1, 44 L. Ed. 953, relied upon by counsel for defendant in error to sustain their contention on the proposition now under consideration, in that the profits on the subcontract involved in the former cases depended on something contingent on future

bargains or speculations, while in the latter they did not.   In the case at bar, as was said by Chief Justice Nelson, who delivered the opinion in the Masterson case, "The constituent elements of the cost should be ascertained from sound and reliable sources; from practical men, having experience in the particular department of labor to which the contract relates."

For the errors noted, the judgment of the lower court must be reversed and the cause remanded, with directions to grant a new trial.

All the Justices concur.