## NATIONAL SURETY CO. v. BOARD OF EDUCATION OF CITY OF HUGO.

No. 7700—Opinion Filed Jan. 23, 1917.

(162 Pac. 1108.)

**1. Decisions—Adoption of Former Holding.**

The first paragraph of the syllabus in National Surety Co. v. Haley, 58 Okla. 263, 159 Pac. 292, is approved and adopted herein.

**2. Contracts — Conditions Precedent—Architect's Certificate—Fraud.**

Where the building contract provides that payments shall be made upon the certificate of the architect as the work progresses, and full payment upon the issue of the final certificate of the architect, ordinarily the issuance of the final certificate is conclusive upon the parties as to the performance of the building contract; but in order for this certificate to have this effect the architect must have exercised an honest judgment in issuing it, and any fraud or want of good faith on the part of the architect destroys the force of the certificate, and renders the same subject to impeachment.

**3. Same—Building Contract — Action For Damages.**

Where the building contract provides that "it is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate of final payment, shall be conclusive evidence of the performance of this contract, wholly or in part, against any claim of the owner, and no payment shall be construed to be an acceptance of any defective work," and the final certificate of the architect is issued, the building accepted and paid for, held, that an action for damages proximately resulting from latent defects or defective workmanship in the building may be maintained against the contractor and the surety on his bond, within a reasonable time after the discovery of such defects.

(Syllabus by Galbraith, C.)

Error from District Court, Choctaw County; C. E. Dudley, Judge.

Action by the Board of Education of the City of Hugo, successor to the School District of the Town of Hugo, Indian Territory, against R. O. Langworthy and National Surety Company. Judgment for plaintiff, and defendant National Surety Company brings error. Affirmed.

I. L. Strange, for plaintiff in error.

E. H. Foster, and R. E. Stephenson, for defendants in error.

Opinion by GAILBRAITH, C. This action was commenced by the defendant in error against the contractor and the surety company to recover damages for breach of a building contract. It was charged that in October, 1905, the school authorities of the town of Hugo entered into a contract with R. O. Langworthy whereby he undertook and agreed to furnish the material and to erect a two-story brick school building and to place therein a heating plant of definite description and capable of producing a specified result, and that the contractor executed a bond, with the surety company as surety, in the sum of $4,123, conditioned for the faithful performance of the contract on the part of the contractor; that the contractor had failed to perform the contract, and damages had been sustained on account thereof in the sum of $3,300; that the contractor had failed to pay the damages, and the surety company had failed to pay upon demand, and judgment was prayed in the amount of the damages sustained against the contractor and the surety company. The contractor, being a nonresident of the state, was not served with process and made no appearance in the action. The surety company answered and denied liability on the grounds: (1) That material changes had been made in the plans and specifications without the knowledge or consent of the defendant, and that the contract had been thereby modified and changed so as to relieve it from liability; (2) that under the contract the architect was made the arbiter as between the owner and the contractor as to the completion of the contract, and that his final certificate was conclusive upon them as to the performance of the contract, and that the architect had issued a final certificate, and that the building had been accepted and paid for, and therefore there was no liability on the part of the surety company; and (3) that the contract provided that payments to the contractor should be made every two weeks up to 80 per cent. of the work then finished, and that 20 per cent. of these payments should be retained until after the completion of the building, and all claims and demands against it discharged, and that the owner had not retained this 20 per cent. as the contract provided, and that therefore the surety was relieved from liability on its bond. A reply was filed denying that the payments to the contractor had not been made in strict compliance with the terms of the contract, and also denied that any material changes had been made in the plans and specifications, and admitted that the final certificate of the architect had been issued and the building had been accepted and paid for by the owners, but averred that such final certificate was wrongfully issued by the architect, in this, that he

either knew of the failure of the contractor to erect and equip the building as specified in the plans and specifications, or if he did not know this the want of knowledge was due to gross negligence, and his act in issuing the certificate was in effect a fraud upon the owner, and they were therefore not bound by it. Upon the issues thus formed, the cause was tried to the court and a jury, and a verdict returned for the plaintiff. To review that judgment this appeal has been prosecuted.

It is first complained that the trial court erred in permitting an amendment to the petition just before the trial, and some two years after the filing of the original petition, and after the cause had been tried and judgment entered and an appeal taken to the Supreme Court, and the cause reversed for a new trial, for the reason that the amended petition so filed substantially changed the cause of action from one of nonperformance or malperformance of the contract to one for the recovery of the quantum meruit for damages arising since the completion of the building.

We are not able to agree with this contention. It does not seem that the amended petition complained of in any material matter changed the cause of action set out in the pleading amended. The original cause of action was for breach of the building contract. The amended pleading charged a breach of the same contract, and charged the damages arising therefrom in practically the same form, and it was not error in the trial court to permit this amendment to the pleading to be filed. Limerick v. Lee, 17 Okla. 165, 87 Pac. 859.

It is complained that the trial court erred in admitting the building contract in evidence over the objection of the defendant. This contract was set out in the petition and attached thereto as an exhibit. It was a part of and to be construed with the bond sued upon (National Surety Co. v. Haley et al., 58 Okla. 263, 159 Pac. 292), and it was properly admitted in evidence (Henry v. Allen, 49 Ark. 122, 4 S. W. 201).

Again, it is complained that the court erred in admitting over the objection of the defendant Exhibit D, being the contract entered into by the school authorities for "overhauling the steam heating apparatus" in the building. This writing was admitted in the course of the examination of a witness who was testifying as to the damages sustained by reason of the contractor's failure to put in the heating plant as he had agreed to do, according to the plans and specifications, and

who was testifying as to the amount of damages that had been sustained by the failure to perform the contract in this respect. This evidence was incompetent, and the objection to it should have been sustained. The contract may have been an improvident one, and the building contractor and his surety were not bound by it. First National Building Co. v. Vandenberg, 29 Okla. 583, 119 Pac. 224. However, it does not appear that the plaintiff in error was prejudiced by this error, inasmuch as there was ample competent evidence, excluding this exhibit entirely, to show that damages had been sustained in an amount equal to and in excess of the verdict of the jury.

Again, it is complained that the court erred in excluding a deposition offered on the ground that the objection to the deposition was too general. This was a deposition of the general attorney for the surety company, who resided in New York, and the purpose of his deposition was to show that the surety company did not have notice of the changes made in the construction of the building, and the manner of payments to the contractor. The objection was "to each and every one of these questions as incompetent, irrelevant, and immaterial, and as calling for the conclusions of the witness; the witness not being qualified to testify as to the matters inquired about." The contract provided:

"It is also further agreed that the said party of the second part may make any alteration by adding, omitting or deviating from the aforesaid plans, drawings and specifications, or either of them, which he shall deem proper, and the said architect shall advise, without impairing the validity of the contract, and in all such cases the said architect shall value or appraise such alteration, and add to or deduct from the amount herein agreed to be paid to the said first party the excess or deficiency occasioned by such alteration."

It thus appears that the contract provided for the manner of making changes in the construction and for estimating the cost thereof. and for the manner of their payment, and did not provide that notice thereof should be given to the company at New York, or its general attorney, and the fact that he did not have notice of any changes in the construction of the building, or in the time and amount of the payments to be made to the contractor, could in no manner affect the liability of the surety on the bond.

As to the grounds that the objection was too general, it is sufficient to say that under section 5070, Rev. Laws 1910, an objection

made in this form "shall be deemed to cover all matters ordinarily embraced within such objection." Since this objection was made to each interrogation, it was sufficient.

It is further complained that the court erred in excluding Exhibit B offered by the defendant, the same being a writing purporting to have been signed by the president of the school board under date of September 27, 1906, and addressed, "To Whom it May Concern," and to the effect that the contractor had completed the building according to the plans and specifications, and that the work had been entirely satisfactory. This writing may have tended to show that the contractor had one friend at least on the school board, but it did not tend to prove any of the issues in the case, nor did it in any way bind or purport to speak for the school board, and was therefore incompetent, irrelevant, and immaterial.

Again, it is complained that the court erred in excluding a question propounded to the contractor, whose testimony was taken by deposition, and who testified that when the building was accepted a small crack was discovered in one of the walls, and that this was caused by the weight of the wall settling in a wet clay foundation, and that in excavating for the wall he came upon a spring, and that he had directed his foreman to notify the school board of this spring, and he was asked:

"What steps, if any, had the school board taken with reference to protecting the wall of the school building from the effect caused by this seepage of water?"

The question was objected to as being incompetent and irrelevant, because the contract provided that the contractor should put the wall down to solid ground, and should do his work in a workmanlike manner, and it was the contractor's duty, and not that of the school board, to have provided against this seepage of water under the wall, and therefore it was immaterial what steps, if any, the school board had taken to provide against damages from this source. The trial court rightly ruled in sustaining the objection to this question.

The giving of instruction No. 3 by the court to the jury is complained of. This instruction is as follows:

"You are instructed that no certificate issued by the architect, Henry T. Phelps, would bind plaintiff to accept or pay for work or material not done or furnished in accordance with the terms of the contract and specifications. You are further instructed that if you believe that said work was not done in a good and workmanlike manner, and that the heating plant installed in said building was defective and did not heat said building as specified in the contract and specifications, this would constitute a breach of the contract, and the issuance of a certificate by said architect would not relieve the contractor and the surety on his bond from the payment of the damages sustained by plaintiff on account of said breach of contract."

The contract provided as follows:

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, wholly or in part, against any claim of the owner, and no payment shall be construed to be an acceptance of any defective work."

The instruction above set out is supported by the authorities. The general rule is announced in R. C. L. vol. 6, par. 340:

"Where the parties to a construction contract designate a person, such as an architect or engineer, who is authorized to determine questions relating to its execution. and stipulate that his determination shall be final and conclusive, both parties are absolutely bound by his determination of those matters which he is authorized to determine, except in case of fraud, or said gross mistake on his part as would necessarily imply bad faith or a failure to exercise an honest judgment. The reason underlying this rule is that under such circumstances the contract makes the architect or engineer the arbiter, and that his determination can be attacked only in such manner as that of any other arbitrator."

As to the right to impeach the certificate of the architect, the same authority (paragraph 341) says:

"There can be no doubt that notwithstanding the fact that a contract makes the certificate, report, opinion, or decision of an engineer or architect conclusive on the parties, the law writes into this provision that the conduct of the engineer or architect must be free from fraud. Fraud on his part destroys the effect of the provisions. Therefore, if the engineer or architect fails to exercise his honest judgment, or makes such gross mistake as implies bad faith, his decision, report, certificate, or opinion may be impeached."

Nor will the taking possession of the building and payment of the contract price prevent the owner from recovering damages for defective work by the contractor, particularly if the defects in the work were latent. United States v. Walsh, 115 Fed. 697, 52 C. C. A.

419; Cannon v. Hunt, 116 Ga. 452, 42 S. E. 734; and Ludlow Lumber Co. v. Kuhling, 119 Ky. 251, 83 SW 634, 115 Am. St. Rep. 254.

The clause of the building contract involved also provided that final payment upon the architect's certificate "should not be construed to be an acceptance of any defective work." The record shows that the items on which the claim for damages was based, aside from the heating plant, arose from defective work; that is, a failure to properly tie the walls at one corner of the building, and a failure to prepare the proper foundation for one of the walls, and a failure to properly mix the cement, using gravel for crushed stone therein, and a failure to properly drain the foundation trenches, and a failure to supply the heating plant called for by the plans and specifications. The contract specified a certain kind of heating plant that would produce heat in all of the rooms of the building to 70 degrees Fahrenheit, while the temperature outside was 15 degrees above zero. The evidence conclusively showed that the plant was not up to these specifications, and that it was so defective that it was practically worthless and had to be supplanted by a practically new plant; that, while a small crack only appeared in one of the walls in the building when it was accepted, this crack extended until the wall became unsafe, and' large sums had to be expended in order to make it safe for the uses for which it was intended. These defects in the construction of the building and the heating plant were largely latent defects that were not apparent at the time of the acceptance of the building. This feature of the case was presented by the court to the jury in instruction No. 4, also complained of, which reads as follows:

"You are instructed that the acceptance of a' building by an owner, agent, or achitect does not operate as a waiver of such defects as exist therein which are latent and not discoverable by the exercise of ordinary care. And if you believe and find from the evidence in this case that the school building which the defendant Langworthy contracted to build and construct for plaintiff was not constructed and completed in accordance with the terms of the contract and specifications, but that the same was defective, and said defects were latent and not discoverable by the exercise of ordinary care at the time of the acceptance and the payment of the amount specified in the contract, it would constitute no defense in this action, and your verdict should be for the plaintiff, without regard to whether or not a certificate was issued by said architect."

This instruction is a fair statement of the rule of law applicable to the issues in the instant case.

There is complaint made of other instructions of the court, but we have carefully examined them, and they seem to fairly present the law arising upon the issues made by the pleadings and the evidence. The instructions requested by the surety company, in so far as they state the correct rule of law, are covered by the very full instructions of the court given the jury, and for that reason the refusal to give them was not error. For instance, instruction No. 4 requested by the surety company, in effect declared that if the 20 per cent, provided in the contract to be retained on the payment as the work progressed was not retained, and the company did not consent to this failure to comply with that provision of the contract, then the jury should find for the defendant. This is not a correct statement of the law, as will be seen by the decision of this court in National Surety Co. v. Haley, supra, where the rule is announced in the first paragraph of the syllabus as follows:

"Where a building contract made a part of the bond provided that 'payments on the work shall be made from time to time as the work progresses upon the architect's certificate that said amounts have become due and at no time until the completion will they be made to exceed 85 per cent. of the value of work finished and in place at the date of each'; and where said payments did exceed 85 per cent. of the value of the work finished and in place at the date of each payment, assuming that a compliance with the stipulation was a condition precedent to a right to recover on the bond, held, in a suit by the obligee against the surety company, a surety for hire upon the bond, that a failure to perform it will not defeat a recovery thereon in toto, but only to the extent defendant has been injured."

The record shows that the surety company failed to sustain the burden which this rule imposed upon it; that is, it failed to show 'n the first place that the 20 per cent. was not retained until three days after the completion of the building as the contract provided, and again it failed to show to what extent it was injured, if at all, by reason of the manner of the payment to the contractor. It is argued that this bond and contract having been executed in the Indian Territory prior to statehood, and while the Arkansas law was in force in that territory, these are Arkansas contracts and should be construed according to the laws of that state. This may be true. It is also true that the contract in suit must be construed according to the law governing such contracts which, in the absence of a controlling statute, is practically the same in Oklahoma, the Indian Territory, and Arkansas, and is the common

law. No statute of this law that would have any bearing upon jurisdiction tion has been cited, and we therefore assume that there is none. The statute in Oklahoma prescribed the measure of damages for breach of contract in section 2852, Rev. L. 1910, and is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." This statute is merely declaratory of the common law. Callahan & Co. v. Chickasha Cotton Oil Co., 17 Okla. 544, 87 Pac. 331; Wiebener v. Peoples, 44 Okla. 32, 142 Pac. 1036, Ann. Cas. 1916E, 748. The rule for the measure of damages for breach of contract as announced by the Supreme Court of Arkansas is practically the same as the above, "whatever amount of damages the evidence shows she suffered by reason of this breach of the contract on the part of the defendant." Plunkett v. Meredith, 72 Ark. 3, 77 S. W. 600. The result will be the same in the instant case whether the damages for the breach of the contract are measured by the law of Oklahoma or Arkansas. In either event, it is to be the amount of the injury resulting to the school board by the breach of the contract on the part of the contractor. This is the extent of the liability of the surety in the instant case. Its claim for a release of liability has been determined against its contention in the foregoing discussion.

That leaves the remaining issue the amount of the injury sustained by the school board by reason of the failure of the contractor to faithfully perform his building contract. This was to be measured by the jury. The evidence offered on behalf of the board shows the amount of damage to have been as much as that returned by the jury, and that the verdict therefore is supported by the evidence and is conclusive on this court. The record justifies the statement that the conduct of the contractor since the completion of the building, and the action of the architect while the work was being performed, left room for well-grounded suspicion that both were careless in the discharge of their duties, and were in no way sensitive of the obligations imposed upon them by the reason of their contract.

No prejudicial errors of law appearing in the record, and the evidence being ample to support the verdict of the jury, we are constrained to hold that the judgment appealed from should be affirmed.

By the Court: It is so ordered.