[Sac. No. 4423. In Bank.—March 28, 1933.]

G. G. BLYMER et al., Respondents, v. SUTTER BUTTE CANAL COMPANY (a Corporation), Appellant.

Isaac Frohman and Seth Millington for Appellant.

Elmer W. Armfield and Arthur B. Eddy for Respondents.

PRESTON, J.—The word "plaintiffs" is used herein to designate plaintiffs and their co-owners of land. The appeal is by defendant from judgment for plaintiffs, which judg-

ment must be reversed as the essential findings of fact upon which it is based are in direct contradiction of findings previously made on the identical issues of fact by the Railroad Commission in a like proceeding before it between these same parties. Only such matters as are necessary to a discussion of this subject will be here set forth:

On May 5, 1918, defendant, a public utility water company, entered into a written agreement with plaintiffs for the construction of a ditch from its canal to their lands for irrigation purposes and plaintiffs agreed to deposit with defendant the funds necessary for the construction work and to take water from the canal at a specified yearly rate. Defendant was to refund to plaintiffs over a period of years, without interest, the sums so deposited. Plaintiffs protested at the terms of this contract but, needing water immediately, they finally executed it upon attachment thereto of a rider which provided that the contract was "to be subservient to any ruling of the Railroad Commission in the matter of rates or other matters therein" and that it was expressly agreed that any controversies arising over the exactions incorporated in the terms of said contract should be referred to the Railroad Commission and its ruling thereon should be retroactive and operative upon said contract and should inure to the benefit of said land owners.

On June 20, 1918, differences between the parties were referred to the Railroad Commission. Plaintiffs claimed that the contract was manifestly unfair as the company should have made the extension and given the water service without requiring any deposit whatsoever from the consumers. They asked that the commission promulgate a rule or regulation under which the whole of the money advanced plus interest thereon should be refunded. Thereafter and on April 30, 1919, there became effective section 3 of Revised Rules and Regulations, approved by the commission, which provided: "3. The company will make all reasonable enlargements or extensions of its ditches at its own expense, provided that if the proposed enlargement or extension is noncompensatory or the future use of water uncertain, the Company may require that its estimated cost . . . be deposited with it by the prospective consumer . . . The amount deposited . . . shall be returned without interest at the rate of one-seventh of the gross revenue received from

the extension, payable in annual instalments until the entire amount deposited has been returned . . . ''

This rule gave rise to an issue between the parties as to whether the ditch was to be considered as compensatory and the future use of water certain. The construction cost was in the neighborhood of $20,000, $3,884 of which these plaintiffs advanced. Defendant, acting pursuant to the proviso of the rule, supplied their lands with water from 1918 and, having collected substantial revenues, has made proportionate yearly refunds to them on account of said deposit. Plaintiffs, however, at all times contended that defendant should have borne the cost of making the ditch and they claim that they are therefore entitled to a return of the unrefunded portion of their deposit in a lump sum. In 1919 they filed with the Railroad Commission a formal complaint setting forth substantially the allegations of the complaint in this cause and praying for substantially the same relief, that is, they asked that the commission adjudge that the past and future use of water from the ditch was certain, that it was a compensatory ditch and that they were entitled to an immediate return in full of the entire unrefunded portion of the said funds advanced by them, with interest thereon. Numerous public hearings were had before the Railroad Commission and voluminous evidence was taken. Finally in July, 1921, the commission rendered its decision (Case 1352, Dec. 9294, rendered July 30, 1921), wherein it set forth at length the facts as found by it and its application thereto of said rule 3. We quote the closing paragraph of this decision:

''We will now consider the question of whether or not Rule No. 3 should apply to complainants herein as applicants for irrigation service. The Commission is not convinced . . . that rice will continue to be planted to such an extent in the future as it was during the years 1918, 1919 and 1920. Let us presume that the planting of rice on the lands under this extension should be totally discontinued. In such an event the utility may be called upon to furnish a negligible amount of water . . . The revenues . . . collected . . . would probably be insufficient to pay operating expenses on the extension. Again, we have the case of complainant Ashley pumping water from a drainage canal . . . thereby discontinuing the supply of the de-

fendant utility, and his statement . . . that it is his intention to discontinue the supply of the Sutter-Butte Canal Company altogether. There is nothing in the record indicating that other consumers intend to follow this course, but the possibility of their so doing is of course suggested. We believe that the interests of the consumers . . . will best be served by the utility being permitted to rebate the amount advanced by the complainants in the manner provided by the company's rules. The complainants would not appear to be unduly burdened by the utility being permitted to follow this course inasmuch as it is shown hereinbefore that if the revenues from the extension should continue as they did during 1918, 1919 and 1920, the total amount advanced . . . will have been returned in about three years, the only loss to complainants being interest on the money so advanced. If the revenues should decline then, of course, a greater length of time would elapse before the money will have been returned. In either event, no injustice is done to either party, and the application of such a principle makes for a stabilization of the financial affairs of the utility, which, in turn, is rejected in a dependable and proper service to the consumers . . . Said complaint . . . is hereby dismissed.''

Following the dismissal of their complaint by the Railroad Commission, plaintiffs applied to this court for writ of review. Our opinion, rendered February 20, 1922, upon denial of their application (*Ashley* v. *Railroad Commission*, 188 Cal. 234–236 [204 Pac. 825]), holds: ''The petition to this court does not, in itself, state any facts which show that the Railroad Commission has exceeded its jurisdiction. It contains nothing more than general statements that the decision . . . violates the rights of the petitioners and that it is unreasonable and discriminatory. . . . With respect to the request for the making of rules and regulations, it seems sufficient to say that such matters are largely, if not entirely, discretionary with the Commission, and no facts are set forth which show such abuse of discretion as to make its refusal an excess of jurisdiction. With respect to the part of the complaint asking for an order by the commission upon the Canal Company requiring it to repay to the petitioners the money advanced by them, we think the commission properly dismissed the application. It was in effect a complaint to recover money and it necessarily assumed that the com-

mission has jurisdiction to entertain actions to compel public utilities to pay debts owing by them for money borrowed to enable them to construct their canals or works. We are not advised that the commission has jurisdiction of that character. It is part of the jurisdiction of the superior courts of the state; . . . It is not pointed out wherein the order dismissing the complaint and refusing to give the relief asked thereby has produced or will produce any unlawful discrimination between the petitioners and other persons. For these reasons we deny the application for the issuance of a writ of review."

On May 20, 1922, plaintiffs instituted this action, their complaint containing, as above stated, substantially the same allegations as were made in the proceeding before the Railroad Commission. Defendant answered interposing, among other things, the defense that the decision of the Railroad Commission made the matter *res judicata*. However, in view of the holding of *Ashley* v. *Railroad Commission, supra,* above quoted, to the effect that the commission was without jurisdiction to consider that part of the complaint asking for a money judgment, the trial court disregarded said defense and received evidence on all the issues tendered by the pleadings, and thereafter made its findings to the effect that the essential allegations of the complaint were true; that the future use of the water was certain; that defendant had collected approximately $100,000 in revenues and had repaid to plaintiffs $928.50, of the $3,884 advanced, leaving due them the sum of $2,955.50; further that the complaint herein and the complaint before the commission were substantially the same; that, however, the latter complaint was dismissed and writ of review denied (*Ashley* v. *Railroad Commission, supra*); hence the court concluded that plaintiffs were entitled to receive the unrefunded balance of their said deposit with interest from May 28, 1918, on the amounts as they remained due. Judgment for plaintiffs followed in the sum of $4,923.44. Defendant appealed.

██ It is to be noted that rule 3 provides that the company will make all reasonable extensions at its own expense, but if the proposed extension "is noncompensatory or the future use of water uncertain, the company may require" a deposit, etc. In other words, the real issue between these parties was whether the ditch should have been classed as

compensatory and the future use of water certain. This was an issue of fact, dependent in part upon the rules, regulations and rates approved by the commission for the utility, and it was an issue within the jurisdiction of the commission to hear and determine, upon which its findings were final and conclusive. As the rule was designed to apply prior to continued use of an extension, the showing made upon the trial of this cause that the ditch had in fact paid revenues and the use of water had been continuous from 1918 to 1925, was not determinative in considering whether the original classification of the ditch as noncompensatory or the use of water uncertain was a wise exercise of discretion. To state the matter another way, the very facts which plaintiffs sought to establish in this action as a basis for their prayer for a money judgment, had been finally and conclusively determined to the contrary by the said proceeding before the commission.

But, plaintiffs contend, under the doctrine of the Ashley case, the trial court properly disregarded the findings of the commission, in view of the holding there made that the commission had exceeded its jurisdiction. However, this court, in the Ashley case, expressly limited its restriction upon the jurisdiction of the commission to its consideration of "the *part* of the complaint asking for an order by the commission upon the Canal Company requiring it to repay to the petitioners the money advanced by them". Nowhere is it implied in the language of that decision that the commission was without authority to pass upon the questions of fact relating to classification of the ditch and the certainty of the future use of water. Although the opinion is very brief, it nevertheless recites that no facts are shown that the commission exceeded its jurisdiction and with respect to the making of rules and regulations, such matters are largely, if not entirely, discretionary with the commission and "no facts are set forth which show such abuse of discretion as to make its refusal an excess of jurisdiction".

A simple statement of this case is that if the commission had found that said ditch should have been considered compensatory and the future use of water certain, then plaintiffs would have had a cause of action in the superior court, based upon such findings of the commission, for the return, with interest, of all unrefunded portions of their

578

deposit. In other words, the decision of the commission would in that event have paved the way for them to secure a money judgment in the superior court. But as the findings of the commission, well supported by ample evidence, were to the opposite effect, and were binding and conclusive, plaintiffs had no foundation upon which to ground a plea in the superior court for a money judgment.

The judgment is reversed, with directions to the court below to dismiss the action.

Curtis, J., Thompson, J., Shenk, J., Langdon, J., Waste, C. J., and Seawell, J., concurred.

Rehearing denied.