[Civ. No. 1828.   Fourth Appellate District.—March 31, 1938.]

FOOTHILL DITCH COMPANY, Respondent, v. WALLACE RANCH WATER COMPANY, Appellant.

[Civ. No. 1829.   Fourth Appellate District.—March 31, 1938.]

FOOTHILL DITCH COMPANY, Respondent, v. WALLACE RANCH WATER COMPANY, Appellant.

McClure & Combs, Freston & Files and James A. McLaughlin for Appellant.

McFadzean & Crowe and James K. Abercrombie for Respondent.

MARKS, J.—This opinion covers two consolidated actions to recover for services rendered in diverting water from the Kaweah River and transporting it through a conduit for a distance of about four miles to diversion points of Wallace Ranch Water Company. The two actions are identical except as to the time during which the water was diverted and transported and the amounts sought to be recovered. The Foothill Ditch Company had judgments in both actions and Wallace Ranch Water Company has appealed. The causes were tried together and are presented on a single reporter's transcript. They have been consolidated for the purpose of this appeal. Where necessary we will refer to the first action filed as the old case and the second action as the new case.

The original complaint in the old case is not in the record. We are informed by counsel that it was filed in 1931. In that action we have before us a first amended complaint which was filed on January 24, 1936. The first amended complaint sought to extend the period over which the services had been rendered and increase the amount of recovery. The trial court held that this was an attempt to state a new and separate cause of action which could not be set up in an amended complaint, and only allowed recovery for the services rendered from August 1, 1929, to June 30, 1931, which was presumably the period covered by the original complaint.

The complaint in the second case was filed on January 6, 1936, and sought recovery for services rendered in diverting and delivering the water for four years prior to that date.

At about the close of the trial both pleadings were amended to conform to the proof by the addition of the allegation in each that the accounts sued on were book accounts.

The facts are not in dispute. The controversy between the parties arises from a difference of opinion as to the proper interpretation of and construction to be placed upon orders of the railroad commission and the decision and judgment in the case of *Wallace Ranch Water Co.* v. *Foothill Ditch Co.*, 5 Cal. (2d) 103 [53 Pac. (2d) 929].

The parties have been engaged in litigation for a number of years. A complete statement of the historical facts is contained in the case of *Wallace Ranch Water Co.* v. *Foothill Ditch Co., supra.* We will not repeat those facts but will confine ourselves to a statement of such additional facts as affect the present cases. A brief review of the orders of the railroad commission will be necessary.

Since at least April 20, 1915, and probably for a number of years prior to that date, Foothill Ditch Company has been a public utility engaged in diverting water from the Kaweah River and transporting it through ditches, flumes and pipe lines to various consumers. The total length of the system is about eighteen miles. Wallace Ranch Water Company receives its water out of a flume belonging to Foothill Ditch Company at a point about four miles below the intake so we need not concern ourselves with the balance of the distributing system.

On April 20, 1915, the railroad commission of California by its decision number 2309 fixed the rates to be charged by Foothill Ditch Company for the services it rendered its consumers. A charge of twelve cents per miner's inch of flow of water for twenty-four hours was fixed for water delivered to all consumers except Wallace Ranch Water Company's predecessor in interest which was given the preferential rate of five dollars per second foot flow of water per month.

On November 17, 1921, in its decision number 9759 the railroad commission again fixed charges to be collected by Foothill Ditch Company at fourteen cents for each miner's inch of flow of water for twenty-four hours for all consumers except Wallace Ranch Water Company's predecessor which was given the preferential rate of six dollars per second foot flow of water per month.

Both the foregoing orders of the railroad commission became final. However, Wallace Ranch Water Company and its predecessor did not pay in full the rates fixed in either of the orders.

The matter of rates to be charged by Foothill Ditch Company again came before the railroad commission in 1928. The hearing resulted in decision number 19964 which was rendered on June 29, 1928. A rehearing was granted because of no notice, or defective notice, given to Wallace Ranch Water Company and to the California Citrus Lands and Packing Company, one of its stockholders. A rehearing was held which resulted in decision number 21249 rendered on June 18, 1929. (33 Op. & Orders of Ry. Com., p. 237.) This order fixed the rates to be charged all consumers, including Wallace Ranch Water Company, at fourteen cents per miner's inch flow of water for twenty-four hours.

The failure of Wallace Ranch Water Company to secure a preferential rate in this order and the insistence of Foothill Ditch Company that it pay the rate fixed by the railroad commission was evidently the cause of the litigation that followed.

Wallace Ranch Water Company being dissatisfied with the decision of the railroad commission filed a petition in the Supreme Court for a writ of review to review the decision. This petition was denied without opinion on August 12, 1929. (See, *Wallace Ranch Water Co.* v. *Railroad Com.*, S. F. No. 13580, Minutes of Supreme Court, 78 Cal. Dec. No. 4108.) A petition for rehearing was denied by the Supreme Court on September 10, 1929. (See Minutes of Supreme Court, 78 Cal. Dec. No. 4116.)

Wallace Ranch Water Company next filed an action in the United States District Court wherein it sought to have set aside the last order of the railroad commission. Judgment went for Foothill Ditch Company, defendant in that action, and the complaint was dismissed on the ground that the decision of the Supreme Court of California in denying the writ of review was *res judicata*. This judgment was affirmed on appeal. (*Wallace Ranch Water Co.* v. *Railroad Com. of Cal.*, 47 Fed. (2d) 8.) In the course of its opinion the Circuit Court of Appeals for the Ninth Circuit said:

"It is well settled that the denial of a petition for review by the Supreme Court of the state in this class of cases is

in effect an affirmance of the order sought to be reviewed. (*Napa Valley Elec. Co.* v. *Railroad Com.*, (D. C.) 257 Fed. 197, affirmed under same title, 251 U. S. 366 [40 Sup. Ct. 174, 64 L. Ed. 310].)''

Wallace Ranch Water Company then instituted an action in the Superior Court of Tulare County against Foothill Ditch Company to quiet title to three second feet of water to be diverted from the Kaweah River and a one-third interest in the ditches and flumes in which the water was transported from the Kaweah River to the property of the Wallace Ranch Company. Wallace Ranch Water Company had judgment in that action. Besides quieting title to the water and interest in the ditch and flumes, the judgment in that case annulled the last order of the railroad commission in so far as it sought to fix the rate to be charged for transporting the water and ordered that the Wallace Ranch Water Company pay $150 per year for the services rendered. There was an appeal taken and this court reversed the judgment. (*Wallace Ranch Water Co.* v. *Foothill Ditch Co.*, (Cal. App.) 46 Pac. (2d) 252.) A hearing was granted by the Supreme Court and the judgment of the superior court was modified and affirmed. (*Wallace Ranch Water Co.* v. *Foothill Ditch Co., supra.*)

The next step in the litigation was filing the first amended complaint in the old case and the complaint in the new case. It is admitted that Foothill Ditch Company has diverted Wallace Ranch Water Company's water from the Kaweah River and delivered it through ditches and flumes; that all costs of repairing, maintaining and reconstructing the diversion dams and the ditches and flumes, and cleaning the latter, have been paid by Foothill Ditch Company; that proper measuring devices have been installed; that the supervising engineer, ditch tenders, office employees and all other laborers and employees have been paid by Foothill Ditch Company as well as all other costs and expenses, without any contribution from Wallace Ranch Water Company, since the effective date of the railroad commission's order of June 18, 1929. It is also admitted that the judgments represent the total number of miner's inches per day of water delivered to Wallace Ranch Water Company since August 1, 1929, multiplied by fourteen cents, plus legal interest, and less something over $2,000 of the claim which was barred by the statute of limita-

tions. The judgments are based on the order of the railroad commission and are correct in their respective amounts if that order is controlling in these actions. It follows that if Foothill Ditch Company is legally justified in charging Wallace Ranch Water Company the sum of fourteen cents per miner's inch flow for a twenty-four hour day of water delivered to it, the judgments must be affirmed, if the accounts are book accounts and the four-year statute of limitations applies here.

Wallace Ranch Water Company presents four grounds for reversal of the judgments which it states as follows:

"The easement and rights accorded to appellant by the Supreme Court nullify any contention that respondent can charge appellant rates for transporting appellant's water.

"Respondent waived any rights which it may have had under the 1929 order of the Railroad Commission.

"A second independent reason why respondent is not entitled to rely upon the 1929 order as a basis for recovery is that the service to be rendered by respondent is not sufficiently defined therein.

"There is no foundation for any recovery in *assumpsit* or on the common counts." We will consider these contentions in the order they are stated.

Wallace Ranch Water Company's first ground of reversal is but an attack in a new form upon the order of the railroad commission of June 18, 1929. It argues that since the Supreme Court has held in the case of *Wallace Ranch Water Co.* v. *Foothill Ditch Co., supra,* that the plaintiff in that action (defendant here) was the owner of three second feet of the flow of the Kaweah River, when nine second feet flow was available to the parties, and further held that the corporation had an easement in the ditches and flumes of Foothill Ditch Company to transport its water, the order of the railroad commission is in effect annulled because Foothill Ditch Company cannot charge Wallace Ranch Water Company for services which it is given the right to perform for itself in delivering its own water. This argument is more ingenious than logical or forceful.

The railroad commission of California is established under the provisions of section twenty-two of the Constitution and the Public Utilities Act. (Stats. 1915, p. 115, as amended.) Section 67 of that act provides that no court of the state,

other than the Supreme Court, "shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the execution or operation thereof . . . " The same section provides that the Supreme Court alone shall have power to review the decisions of the railroad commission and then only by means of a writ of review. Full force and effect have been given by the courts to these provisions of the Public Utility Act. In *Wallace Ranch Water Co.* v. *Foothill Ditch Co., supra,* on page 121, it is said:

"Under such circumstances, the trial court had no jurisdiction directly or indirectly to overrule an order of the railroad commission. The power to reverse, review, correct or annul orders of that commission rests solely in the Supreme Court (sec. 67 of the Public Utilities Act *supra*) and the superior court is without jurisdiction in the premises. (*Pacific Tel. & Tel. Co.* v. *Eshleman*, 166 Cal. 640 [137 Pac. 1119, Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652] ; *Truck Owners etc. Inc.* v. *Superior Court*, 194 Cal. 146 [228 Pac. 19] ; *Allen* v. *Railroad Commission*, 179 Cal. 68 [175 Pac. 466, 8 A. L. R. 249] ; *People* v. *Hadley*, 66 Cal. App. 370 [226 Pac. 836].) It is clear, therefore, that those portions of the findings, conclusions and judgment that purport to fix the rate to be paid by plaintiff to defendant for the services rendered, and that purport to find that the commission was without jurisdiction should be stricken."

It is at once apparent that the judgment in the case of *Wallace Ranch Water Co.* v. *Foothill Ditch Co., supra,* which was modified and affirmed by the Supreme Court, could not modify, nullify or set aside all or any portion of the order of the railroad commission. While the judgment was modified and affirmed by the Supreme Court, after modification it was still a judgment of the Superior Court of Tulare County. It became final and could be enforced by that court. It was not a judgment of the Supreme Court. The superior court could not annul or modify an order of the railroad commission. Further, it was not a judgment of the Supreme Court in an original proceeding in certiorari instituted in that court which is the only proceeding in which that court has jurisdiction to annul an order of the railroad commission. Such jurisdiction is not possessed by any other court. It follows that the judgment in the case of *Wallace Ranch Water*

*Co.* v. *Foothill Ditch Co., supra,* could not annul, modify or set aside the order of the railroad commission of June 18, 1929, which is the basis of the instant action.

■ The most that can be said of the Tulare County judgment after its modification by the Supreme Court is that it quieted the title of the Wallace Ranch Water Company to its water, to an easement in the ditch and flume and perhaps gave it the right to flow its own water through the conduits. If we assume, without holding, that the judgment gave it that last mentioned right, still it is clear that right was never exercised by the Wallace Ranch Water Company. It permitted the Foothill Ditch Company to perform that service for it and to pay all expenses in connection with the operation. If the Wallace Ranch Water Company possessed that legal right it does not follow that the right could be exercised by it without any compensation to the Foothill Ditch Company. The fixing of the amount of such compensation is a matter solely within the jurisdiction of the railroad commission, subject to review in appropriate proceedings by the Supreme Court.

■ While, formerly, there may have been some doubt expressed as to the finality of the findings and orders of the railroad commission, it is now settled that where the railroad commission makes findings of fact and an order after hearing in a matter in which it has jurisdiction of both the subject-matter and the parties, and where the order becomes final, a trial court cannot make findings contrary to those of the commission or render judgment modifying or nullifying its order. (*Haynes* v. *MacFarlane,* 207 Cal. 529 [279 Pac. 436]; *Blymer* v. *Sutter Butte Canal Co.,* 217 Cal. 572 [20 Pac. (2d) 320]; *Wallace Ranch Water Co.* v. *Foothill Ditch Co., supra.*) Thus the doctrine of *res judicata* now extends to such orders of the railroad commission. ■ If Wallace Ranch Water Company feels aggrieved by the order of the railroad commission, and if it believes it has grounds therefor, it can, on a proper showing, ask that body to hold a hearing to review the rates fixed for service to be rendered it by Foothill Ditch Company. That body, and not the courts, has the primary jurisdiction to fix rates to be charged by public utilities.

■ The arguments of Wallace Ranch Water Company under its second ground of reversal are but another method

of attack on the finality of the order of the railroad commission. In its final analysis, its arguments in support of its second ground for reversal are but a restatement in a different form of the arguments under its first ground for reversal. What we have already said, and the authorities we have cited, sufficiently dispose of these arguments. We need not repeat them.

Further, the trial court found there was no waiver of any rights under the last order of the railroad commission and there is evidence to support that finding. If any waiver of rights under the earlier orders be assumed, such waiver would not be controlling here. Those orders are not the direct foundation of Foothill Ditch Company's right of recovery. That right was fixed under the last order of June 18, 1929. There is no waiver that can be claimed under that order.

■ Wallace Ranch Water Company next argues that the order of the railroad commission is void on its face for uncertainty in that it does not go into sufficient detail in defining the exact service to be rendered by Foothill Ditch Company in consideration for. the compensation to be paid to it. It should be a sufficient reply to this argument to observe that the order is sufficiently definite and certain to have permitted satisfactory performance under it since its rendition on June 18, 1929. Wallace Ranch Water Company admits that it has received its water in due time and in proper quantities. It is not now questioning nor has it questioned due performance. It is complaining of a high charge for performance. Further, the particular decision of the railroad commission which Wallace Ranch Water Company challenges here has been upheld by the Supreme Court. (See *Wallace Ranch Water Co.* v. *Railroad Com.*, S. F. No. 13580, Minutes of Supreme Court, *supra.*) Thus the question has been adjudicated and that adjudication has become final as far as this court is concerned. (*Wallace Ranch Water Co.* v. *Railroad Com.*, 47 Fed. (2d) 8; *Southern Pac. Co.* v. *Van Hoosear*, 72 Fed. (2d) 903.)

■ Wallace Ranch Water Company argues its last ground for reversal under two heads. It urges, first, that there was no express or implied promise on its part to pay and no payments were made by it, and, second, that the accounts sued upon were not book accounts and that consequently a considerable portion was barred by the statute of limitations.

Foothill Ditch Company rendered bills each month to Wallace Ranch Water Company showing the water furnished and the charges for such services. The balance unpaid was carried forward each month. Wallace Ranch Water Company accepted and used the water delivered to it. From these facts a promise to pay may be inferred. (*New York Central R. R. Co.* v. *Frank H. Buck Co.*, 2 Cal. (2d) 384 [41 Pac. (2d) 547]; *Northern Assur. Co.* v. *Stout*, 16 Cal. App. 548 [117 Pac. 617]; sec. 1589 C. C.) ▇ A book account may consist of entries on one side only. (*Bailey* v. *Hoffman*, 99 Cal. App. 347 [278 Pac. 498].)

Wallace Ranch Water Company contends that the accounts kept by the Foothill Ditch Company were not kept in books and therefore are not book accounts. This question presents some uncertainties because of the condition of the record. As we have observed, the pleadings were amended by interlineation at about the close of the trial to allege a book account. The question of the fact of *books* being kept did not become really important until about that time which probably accounts for an unsatisfactory state of the record on this one question in a case that was otherwise carefully tried.

The evidence concerning the books kept by Foothill Ditch Company may be summarized as follows: That the measurements and meter readings of water delivered to Wallace Ranch Water Company were taken; that they were turned over to Foothill Ditch Company's engineer who reduced them to second feet; that he reported these computations to the secretary of Foothill Ditch Company who computed the value of the service rendered in delivering the water daily at the rate of fourteen cents per second foot; that these computations were then transposed in detail onto sheets; that an original and one carbon copy were made; that the original was sent monthly to Wallace Ranch Water Company and the carbon copy retained in the office of Foothill Ditch Company. One witness testified that these statements were kept in a "folder" and constituted a book account. Another witness testified that these accounts were "assembled" in the company's "office in one place and together as one account". One witness also testified that Foothill Ditch Company kept a "general ledger".

A ledger is defined as follows:

"The principal book of accounts of a business establishment, in which all the transactions of each day are entered under appropriate heads so as to show at a glance the debits and credits of each account." (Funk & Wagnalls Standard Dictionary.) (See, also, *First Nat. Bldg. Co.* v. *Vandenberg,* 29 Okl. 583 [119 Pac. 224].) From this it would seem to appear that the evidence that Foothill Ditch Company kept a general ledger indicated the existence of a book account. (*State* v. *Stephenson,* 69 Kan. 405 [76 Pac. 905, 105 Am. St. Rep. 171, 2 Ann. Cas. 841].) However, as we cannot discover that this book was either introduced in evidence or produced in court we prefer to predicate our decision on this phase of the case on other grounds.

It is rather well settled that a book account cannot consist of numerous loose pages not bound together in some substantial form. To constitute a book the pages must be fastened together with some degree of substantial permanency. (Black's Law Dictionary, 3d ed., "Book", "Book Account"; *MacLaren* v. *Gilbert,* 111 Cal. App. 198 [295 Pac. 349] ; *Ogden Packing & Provision Co.* v. *Tooele Meat & Storage Co.* 41 Utah, 92 [124 Pac. 333] ; *Stieglitz* v. *O. J. Lewis Mercantile Co.,* 76 Mo. App. 275.)

The manner in which the carbon duplicates of the account were "assembled" together or the character of the "folder" in which they were placed cannot be determined from the record. Under the modern method of accounting where the loose leaf system is in general use by many firms, sheets of accounts are so bound together in a folder or assembled in a cover with such degree of permanence that a book results. These records of the water delivered and the amount charged for delivery, assembled in their folder, were present in court and introduced in evidence. The trial judge saw them and the permanency of their binding. What the judge saw was evidence in the case. (*Ethel D. Co.* v. *Industrial Acc. Com.,* 219 Cal. 699 [28 Pac. (2d) 919].) As we cannot determine the character of the binding from the evidence we must presume that what the trial judge saw supports the findings and judgments. We must conclude he saw them bound in a permanent book. The question of the permanency of these records was one of fact addressed to the trial judge. (*Egan* v. *Bishop,* 8 Cal. App. (2d) 119 [47 Pac. (2d) 500].) The trial judge having found that the accounts were book

accounts and there being evidence to support that finding (the appearance of the books in court), the finding is conclusive on appeal.

The judgments are affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 28, 1938, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1938.