[Civ. No. 4116. First Appellate District, Division Two.—April 17, 1922.]

# H. R. WILLIAMS, Jr., Respondent, v. MACONDRAY & CO., Appellant.

[1] PLEADING—ACTION TO RECOVER COMMISSION—VARIANCE.—A complaint alleging that plaintiff was employed to solicit orders for the purchase through defendant of merchandise for the account of customers in certain designated territory and that defendant promised to pay plaintiff a commission of twenty-five per cent of the gross profits made or earned by defendant on all business received by defendant from such customers is sufficiently broad to entitle plaintiff to recover the specified commissions on a transaction wherein the materials were not purchased "for the account" of the customer; but were purchased by defendant for its own account and then delivered to the customer in fulfillment of an order theretofore received.

[2] ID. — IMMATERIAL VARIANCE — LACK OF PREJUDICE. —Where the variance between the allegations and the proof is such that the defendant could not have been misled to its prejudice in maintaining its defense, it will not be regarded as material.

[3] CONTRACTS — INTERPRETATION— INSTRUCTIONS.—The interpretation of a contract is a question of law for the court; and in an action to recover commissions in connection with the sale of merchandise the trial court does not commit error in refusing certain instructions requested by the defendant which improperly limit the scope of the contract pleaded by plaintiff.

[4] ID.—AUTHORITY OF PRESIDENT OF CORPORATION—IMPLIED FINDING —EVIDENCE.—In this action to recover commissions in connection with the sale of merchandise, the evidence, showing that the person with whom plaintiff dealt was the president of defendant corporation, that he and the vice-president of the corporation, who was the manager of the insurance department of defendant, owned all the shares of the capital stock of defendant, that the said president was ostensibly the manager and that he conducted the affairs of the department of defendant to which plaintiff's contract related, that the directors, other than one "dummy" director, had knowledge of the contract with plaintiff and made no objection to it, that the vice-president held a similar contract made and executed by the said president, and that both of said contracts had been recognized by the defendant corporation and certain commissions were paid thereunder, justified the implied finding of the jury that the said president had authority to enter into the contract with plaintiff on behalf of the defendant corporation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   T. I. Fitzpatrick, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Thomas H. Breeze for Appellant.

Wilson & Wilson for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment for $5,000 in favor of plaintiff entered upon a verdict of a jury.

The complaint alleges that on or about January 10, 1918, plaintiff and defendant entered into an agreement whereby plaintiff was employed by defendant to solicit trade with and, if possible, obtain orders from persons, firms, and corporations doing business in or residing in the Republic of China (excepting Manchuria), Hongkong, Philippine Islands, Dutch Indies, Straits Settlements, Australia, and New Zealand for the purchase through defendant of goods and merchandise in the United States for the account of such persons, firms, and corporations, and that in and by said agreement it was understood and agreed that plaintiff should solicit said orders and promote said trade by communicating by mail or cablegram or otherwise with such persons, firms, and corporations, and it was agreed by and between plaintiff and defendant that in consideration of the performance of such services by plaintiff, the defendant would on demand pay the plaintiff a commission of *twenty-five per cent of the gross profits made or earned by defendant on all business received by defendant* from persons, firms, or corporations so residing or doing business in the said countries, or any of them, regardless of whether or not said business was received by defendant as the result of solicitation or efforts by plaintiff.   That immediately after the making of said contract, plaintiff entered upon the performance thereof and that plaintiff thereafter continued to fully carry out and perform the said contract until the thirtieth day of April, 1919, at which latter time defendant, wrongfully and unlawfully and without any cause or reason whatever, refused to allow plaintiff further

to carry out and perform said contract, and that defendant has ever since refused, and still refuses, to allow plaintiff further to carry out and perform said contract, and that plaintiff has at all times since the said refusal of defendant been and he still is, ready, able, and willing to carry out and perform said contract on his part. That while plaintiff was, as aforesaid, carrying out and performing said contract, defendant received orders from persons, firms, and corporations residing and doing business in said countries for the purchase by the defendant in the United States of goods for the account of said persons, firms, and corporations and for the shipment of said goods to said persons, firms, and corporations, and that all of the goods called for by the said orders were purchased by defendant in the United States for the account of the persons, firms, and corporations giving such orders and have been shipped by defendant to said persons, firms, and corporations.

It is further alleged that defendant has paid plaintiff the commissions that became due on certain of said orders, but that defendant has made and earned gross profits on others of the said orders, amounting to the sum of $45,600 and that plaintiff is entitled to twenty-five per cent thereof.

Appellant's first contention is that there is a material variance between the proof and the allegations of the complaint. The argument is based upon the following facts: The profit made by defendant upon which it refused to pay plaintiff a commission was made upon one transaction with the Kailan Mining Administration of Tientsin, North China. There is no dispute about the fact that this business came from the territory covered by the contract between the parties. The record shows that the materials called for by this order were steel rails and that these rails were not purchased by the defendant "for the account" of the customer, but a quotation of price or a "firm offer" was made to the customer by the defendant after defendant had secured quotations of price from the manufacturers. This offer to the customer was for a price three per cent in excess of the price asked at that time by the manufacturers. The customer accepted, by cable, defendant's offer to furnish the rails. Deliveries were to be made at different times in the future. At the time of the offer and acceptance steel prices were

unusually high because of the World War. Defendant however, did not place its orders with the manufacturers at this time, but waited for several months, during which time a great reduction in the price of steel occurred, due to the signing of the armistice. Defendant thereupon purchased the rails at the greatly reduced prices, but held the customer to its acceptance of the offer at the higher price, thus making a large profit.

[1] Defendant now seeks to escape liability to plaintiff, urging that he has pleaded that he was ''employed . . . to solicit orders . . . for the purchase through defendant of . . . merchandise . . . *for the account* of such persons, firms and corporations''; also, that the complaint alleges that ''all of the goods called for by the said orders were purchased by defendant in the United States *for the account* of the persons, firms and corporations giving such orders. . . .'' It is asserted that such allegations do not warrant a recovery on the facts shown.

With reference to the allegations of the complaint regarding the terms of the contract between the parties, we are of the opinion that such allegations are sufficiently broad to cover the facts proven. Aside from the allegation above quoted and referred to by appellant as being insufficient to include the facts proven, there is, as previously stated, an allegation that defendant promised to pay the plaintiff a commission of twenty-five per cent of the gross profits made or earned by defendant on *all business* received by defendant from persons, firms, or corporations so residing or doing business in the said countries. This allegation is sustained by the testimony of plaintiff and is sufficient to include the transaction admitted to have taken place between the defendant and the Kailan Mining Administration.

[2] While there is some variance between the allegation that the indebtedness arose by reason of orders for the purchase by defendant of goods for the account of persons in the territory named, and the proof, which showed that the commission was due upon business handled in a somewhat different manner, we are not disposed to regard this matter as material because it could not have misled the defendant to its prejudice in maintaining its defense under all the facts in evidence in this case. (Code Civ. Proc., sec. 469; *Fielding* v. *Iler*, 39 Cal. App. 559, 562 [179 Pac.

519]; *Holden* v. *Mensinger,* 175 Cal. 302 [165 Pac. 950].)
Plaintiff would have been entitled to have amended his
pleading to conform to the proof or the fact could have
been found in accordance with the proof.    (Code Civ.
Proc., sec. 470.)

It is argued by appellant that it is unlikely that the de-
fendant intended to contract to pay a commission upon
profits made upon direct sales to customers, but that it is
more reasonable to suppose that defendant intended to con-
tract with plaintiff to pay a commission only upon purchases
"for the account" of customers.    We do not see the force of
this reasoning.    It is entirely clear from the record that the
defendant was in the habit of handling its business in either
of two ways: by purchasing for the account of a customer,
charging a commission for its services, or by making a "firm
offer" to the customer and then buying the goods in the open
market for resale to the customer.    The circular letters and
advertising matter sent out by the plaintiff in pursuance of
his contract with the defendant, solicited business from
prospective customers in the prescribed territory, under
either of these arrangements.    The cablegrams covering
the Kailan Mining Administration transaction were submit-
ted to Macondray, by plaintiff, before they were sent out.
Mr. Macondray was in charge of the department where
plaintiff worked and plaintiff necessarily deferred to his
judgment and advice as to the method of handling business
that came to the defendant company.    Macondray was,
therefore, in a position to direct that the business be
handled in either manner.    There seems to be equal reason
for allowing plaintiff a commission upon the one transac-
tion as upon the other.    Regardless of the way the busi-
ness was handled by the defendant, it came to them out
of the territory assigned to plaintiff and in response to
his advertising methods, and plaintiff has testified that the
agreement made with him was for "an interest to the ex-
tent of twenty-five per cent of gross on business done or
coming from China" and the other countries mentioned.

Defendant seeks to charge plaintiff with negligence be-
cause, immediately upon receipt of the acceptance from the
Mining Administration of the offer made to it by defendant,
plaintiff did not place orders with the manufacturers for
the merchandise required.    Of course, the question of

whether or not the plaintiff performed his duties carefully
or negligently or used good or bad judgment during his
period of service with the defendant is not an issue in this
case. It would seem, however, that criticism of plaintiff's
method of procedure would come rather ungracefully from
the defendant in view of the fact that plaintiff's failure to
immediately place such an order resulted in a profit of
many thousands of dollars to defendant, while the pursuit
of the only other method suggested as proper would have
made anything more than a nominal profit an impossibility.
Defendant contends that the fortunate outcome was the
result of merest chance and that plaintiff was not war-
ranted in taking this chance. However, plaintiff has testi-
fied that when he made the offer to the Mining Adminis-
tration it was after consultation with the president of the
defendant company, who was also the manager of the
export department; that prices of steel were then so high
that the defendant was assured they would not go higher
and, in fact, the defendant was expecting a drop in such
prices and also a drop in the freight rates. By the time
shipment was made of this order freight rates had decreased
by fifty per cent and the price of steel had declined suffi-
ciently to afford the defendant a profit, as shown by their
books, of $30,661, after deducting a ''manager's bonus.''
The jury allowed to the plaintiff $5,000.

[3] Complaint is made of the refusal of the trial court
to give certain instructions to the jury by which the con-
tract pleaded is construed to cover only transactions with
customers by which goods are bought for the account of
such customers. Our previous discussion of the pleadings
answers this objection of appellant. We do not consider
the contract pleaded to be so limited in its scope, and we
think such instructions would have been erroneous. It is
true, as contended by appellant, that the question of the
interpretation of a contract is a question of law for the
court, but the instructions offered by defendant on this
subject do not fairly interpret the contract which plaintiff
pleaded and which he proved not only by his own testimony,
but by numerous other facts and circumstances appearing
in the record and hereinafter referred to.

[4] The appellant also contends that there is no proof
of the authority of Mr. Macondray to enter into such a

contract on behalf of the corporation. Briefly, and in substance, the proof is: All of the shares of the capital stock of defendant were owned by Mr. Macondray and Mr. Rathbone. Mr. Macondray was the president of the company; Mr. Rathbone was the vice-president and the manager of the insurance department. Mr. Macondray was, ostensibly, at least, the manager of the export department of defendant, to which department of its business the contract with plaintiff related. Macondray employed and discharged clerks in said department, ordered goods and saw that it was shipped out. No one but Macondray and Mr. Connolly participated in the business connected with the export department; the contract with the Kailan Mining Administration, upon which this commission is claimed, was made by Macondray on behalf of the defendant. There were four directors of defendant: Mr. Macondray, Mr. Kittle, Mr. Connolly, and Mr. Rathbone. The directors, practically, never held a meeting. Mr. Kittle, one of the directors, was merely a "dummy" director owning but one share of the stock and never participated in the business. Mr. Connolly discussed with both plaintiff and Mr. Macondray the contract involved here and was, apparently, satisfied with the same. Mr. Rathbone knew of the contract with plaintiff about January or February, 1918, which was shortly after it was made, and, apparently, he made no objection to it. Mr. Connolly himself had a contract with defendant which was similar to the contract held by plaintiff, and such contract had been made with Connolly by Mr. Macondray as president of the defendant. It was never authorized by or acted upon in any way by the directors, and yet such contract was recognized by the defendant as a binding obligation and payments were made thereunder to Connolly. Defendant also recognized plaintiff's contract, and furnished him with a statement of commissions due him thereunder—in fact, paid $500 upon such commissions and tendered another small sum in full settlement, which was refused. It was only when plaintiff insisted upon having a commission upon this large transaction with the Kailan Mining Administration that any question was raised regarding the authority of Macondray to enter into this contract on behalf of defendant.

Under all of these facts we think the implied finding of the jury that Macondray did have authority to enter into this contract on behalf of the defendant was justified. (*Crowley* v. *Genesee Mining Co.*, 55 Cal. 273, 276; *Stevens* v. *Selma Fruit Co.*, 18 Cal. App. 242, 250 [123 Pac. 212]; *Streeten* v. *Robinson*, 102 Cal. 542, 545, 546 [36 Pac. 946]; *Scott* v. *Superior Sunset Oil Co.*, 144 Cal. 140 [77 Pac. 817]; *Newhall* v. *Levy Bag Co.*, 19 Cal. App. 9, 25 et seq. [124 Pac. 875]; *Aigeltinger* v. *Burke*, 176 Cal. 621, 626, 627 [169 Pac. 373]; *Reardon* v. *Richmond Land Co.*, 21 Cal. App. 357, 358 [131 Pac. 894].)

There are no other matters requiring discussion. The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 15, 1922.

All the Justices concurred, except Shurtleff, J., and Waste, J., who were absent.