[Civ. No. 6602. First Appellate District, Division One.—March 28, 1930.]

H. EDWARDS, Plaintiff and Appellant, v. CALIFORNIA SWEET POTATO CORPORATION (a Corporation) et al., Defendants; A. G. COL et al., Defendants and Appellants.

Simeon E. Sheffey for Plaintiff and Appellant.

Louis Oneal and Maurice J. Rankin for Defendants and Appellants.

GRAY, J., *pro tem.*—In this action to enforce stockholders' liability, the complaint briefly stating essential matters, alleged, in three separate causes of action, that plaintiff's assignor, as accommodation indorser of notes of California Sweet Potato Corporation (hereinafter called the corporation) for the sums of $45,000 and $4,000 paid thereon, for principal and interest, the sums of $46,545.61 and $4,162.24 respectively, and, as accommodation maker of the corporation's note for $8,000 paid thereon for principal and interest, the sum of $8,073.24, of which there is a balance due of $5,878.76, after deducting proceeds from a third party's note, payable to the corporation, which it had deposited as security for payment of assignor's note. The appealing defendants (hereinafter called the defendants) denied these allegations. As to the issues thus raised, the court only found that plaintiff's assignor, after maturity and nonpayment by the corporation, paid on account of the three notes $14,093.58. ■ In their opening brief, defendants claimed that the court's failure to make a separate and distinct finding as to the amount of payment on each note constituted a failure to find on material issues. Properly the court should have made but one finding as to each matter which was common or applicable to all· causes of action and should have made a separate finding on each matter which was common or applicable only to one cause of action. (*Anderson* v. *Blean,* 19 Cal. App. 581 [126 Pac. 859].) While conceding that the finding did determine the total payments on the three notes, defendants originally urged that this lumping together of all payments, by leaving undetermined the amount of payment on each note, deprived them of an opportunity to question the sufficiency

of the evidence to support the finding. However, their statement in their closing brief that plaintiff's concession that a third party had paid practically all of the note for $45,000 "eliminates from discussion of the first three counts of the complaint all question other than that relative to the third count'' (next considered) amounts to an abandonment of this objection and relieves us of further consideration of the matter. (*Estate of Hinde,* 200 Cal. 710 [254 Pac. 561].)

 In its third. count, the complaint alleged that the corporation became indebted to a bank for the sum of $8,000 advanced to it, and that at the time of the advance, plaintiff's assignor, at the corporation's request and as an accommodation maker, executed and delivered to the bank his note in such amount. The court found in accordance with this allegation, except that it found that the money was advanced prior to the execution and delivery of the note. The evidence discloses that the corporation had previously borrowed from the bank, on the note of its fiscal agent, the sum of $10,000 and that the note of plaintiff's assignor was given to satisfy the unpaid balance due thereon. The same note was alleged, proven and found. The only difference between allegation and proof was as to whether the consideration therefor was money advanced by the bank prior or subsequent to its execution and delivery. This difference, therefore, is an immaterial variance (Code Civ. Proc., sec. 469) as plaintiff contends, and not a failure of proof, as defendants urge. (*Brown* v. *Pickard,* 4 Utah, 292 [9 Pac. 573, 11 Pac. 512] ; *Taylor* v. *Morris,* 163 Cal. 717 [127 Pac. 66] ; *Williams* v. *Macondray,* 57 Cal. App. 359 [207 Pac. 285].) This difference could have been removed by an amendment to the complaint, if defendants had been misled (Code Civ. Proc., sec. 469), but, as the record shows no objection at the trial, defendants cannot now, for the first time, attack the findings, amply supported by the evidence, on this ground. (2 Cal. Jur. 278.) · The court correctly found in accordance with the evidence (Code Civ. Proc., sec. 470). Defendants also contend that this finding is unsupported by the evidence, because the bank's records contradict verbal testimony that such sum of $10,000 was deposited in the bank to the corporation's credit. While this is true, yet the same testimony, without contradiction, shows that the corporation received the money

although it may not have so deposited it. This testimony amply supports this finding.

The complaint alleged that the corporation became indebted to plaintiff's assignor in the sum of $19,846.18 for moneys advanced to and for it (according to the fourth count) and for a balance, upon an account stated, due upon an open, mutual and current account (according to the fifth count). The answer denied these allegations. The court found that, on a specified date, a balance upon an open, mutual and current book account was due to plaintiff's assignor from Hunt-Jewett-Bontz Company, that, four years previously, the corporation had, in writing, promised to pay said debt and that it, prior to the commencement of this action, had paid all thereof except $1,227.87 principal and $1,390.03 interest. The court further found that plaintiff's assignor advanced moneys and credits to the corporation in the sum of $17,425.27, upon which interest in the sum of $5,159.23 had accrued. To prove the debt, a book of plaintiff's assignor, which showed about twenty-six items charged against Hunt-Jewett-Bontz Company and but four against the corporation, was admitted in evidence without objection. The assignor testified that the book was opened, prior to the corporation's creation, to show transactions with said company, and that, when the corporation succeeded to the company's business, the charges, which were of the same general nature as formerly, while in truth against the corporation, were continued to be entered against the company. He attempted to give the details and basis of each charge, but was prevented from so doing by defendants' objection that the entries were the best evidence. However, he did testify that each item evidenced a debt due from the corporation. Defendants now urge the insufficiency of the evidence to support the findings because only four items in the book charge or connect the corporation with the transaction recorded. They do concede in their opening brief that oral testimony of the assignor, given on reopening of the case, is competent evidence connecting the corporation with ten items, not charged on the book to it.

Neither count pleads an action of a book account, although the court did find that there was due on a book account the sum of $1,227.87. ▮ To recover upon a book account, the book itself must show against whom the charge is made

and a charge against one person cannot constitute a charge against another. (*Wright* v. *Loaiza*, 177 Cal. 605 [171 Pac. 311].) ■ In view of the meager testimony on this matter, set forth in the briefs, we must assume in support of this finding that the court based it upon the above four items, which are admittedly sufficient in form and amount for that purpose. ■ The introduction of the book in evidence did not render inadmissible the testimony of plaintiff's assignor as to the transactions evidenced by the entries. (*Schurtz* v. *Kerkow*, 85 Cal. 277 [24 Pac. 609]; *Bushnell* v. *Simpson*, 119 Cal. 658 [51 Pac. 1080]; *Cowdery* v. *McChesney*, 124 Cal. 363 [57 Pac. 221].)

■ Plaintiff questions the sufficiency of the evidence to support the finding that Geno & Company were stockholders because, as he claims, the agreement of April 24, 1922, between the corporation and Geno & Company was a stock selling agreement between principal and agent, not a stock subscription, and, even if it were a stock subscription, it was canceled by the board of directors, with the consent of the stockholders. An examination of that agreement clearly shows that, in apt language, it evidenced a sale of stock with a present transfer of title, but with a deposit in escrow to secure payment of the unpaid balance of the purchase price. Ten months later, the board of directors adopted a resolution which, after reciting that Geno & Company threatened litigation and that it would be necessary for the corporation to file suit to compel payment of the balance due under the agreement, authorized the president to adjust and compromise the conflicting claims and to that end to cancel the balance due the corporation upon the surrender, release or return of the stock. Whether the president ever acted does not appear, although the stock was in possession of the corporation at time of trial, marked canceled. The transaction pictured is the mutual cancellation of a completed sale of stock whereby, in consideration of the return of the stock, unpaid for, the corporation canceled the purchaser's indebtedness for that stock. But a subscription for capital stock of a corporation may only be rescinded or canceled with the unanimous consent of the stockholders. (*Pacific Fruit Co.* v. *Coon*, 107 Cal. 447 [40 Pac. 542]; *Thomas* v. *Wentworth Hotel Co.*, 16 Cal. App. 403 [117 Pac. 1041, 1046]; *Silica Brick Co.* v. *Winsor*, 171

Cal. 18 [151 Pac. 425].) Since there is not only an entire absence of an affirmative showing of such consent but the positive testimony of two defendants, that they did not consent, the court correctly found in accordance with the law and the evidence.

Plaintiff contends that, as the evidence shows that there was no consideration for the issuance of "Class B Common" stock, the court erred in including that stock in its finding as to the total number of shares issued, which is one element in determining the extent of the stockholders' liability of the defendants The complaint merely mentions the other two classes of stock and is silent as to this class. Nor does it join as parties defendant the owners of this stock. The only evidence, relative to this matter, is contained in the minutes of the corporation offered by plaintiff and the only pertinent parts of those minutes are the articles of incorporation and two resolutions, adopted by the board of directors on April 4, 1922, and February 3, 1925, respectively. From the articles, it appears that the corporation was incorporated under the laws of the state of Delaware with three classes of stock, to-wit: Preferred and "Class A" common, each with a par value of $100 per share and "Class B" common of no par value. The first resolution, passed at the first meeting of the board, authorized the issuance of all the "Class B" common stock to three named persons, in consideration of their offer to turn over to the corporation the results of their exhaustive study of the manufacture of alcohol from sweet potatoes.

The question as to the proper basis of computing the total number of shares issued, in an action to enforce stockholders' liability where several classes of stock of different par value have been issued, has been presented to the Supreme Court on several occasions, collaterally, but never directly. In *Del Monte L. & P. Co.* v. *Jordan*, 196 Cal. 488 [238 Pac. 710], the court gave as one reason for denying a writ of mandate to compel the Secretary of State to file amended articles of a California corporation, which set forth two classes of stock, one of par value and the other of no par value, that it was the intent of article XII, section 3, of the Constitution, as to stockholders' liability, to require corporations, organized under the laws of the state, to have their capitalization represented in shares of a sin-

gle par value, because of the difficulty in determining the liability where stock differed in value. In *Land Development Co.* v. *Jordan,* 198 Cal. 346 [245 Pac. 187], a writ of mandate was issued, compelling the Secretary of State to file articles of a domestic corporation which stated all stock was of no par value. In that case the stock being all of one class, no difficulty could arise in computing the liability on a share basis. In *Commonwealth Acc. Corp.* v. *Jordan,* 198 Cal. 618 [246 Pac. 796, 801], a writ of mandate was issued to compel the filing of articles of a Delaware corporation, having a mixed stock structure, similar to that of the instant corporation. The court, in that case, stated that the stockholders of a foreign corporation are subjected to the same liabilities as are the stockholders of domestic corporations, when such foreign corporations enter this state for the purpose of transacting business. The court, in passing upon one phase of the question here involved, said:

"The question of how this equalized liability of the stockholders of a foreign corporation is to be established and enforced is one which would be determinable by the courts when it arose in a proper case, but we do not think it is presentable upon the threshold of the proposed entry of such foreign corporation for the purpose of transacting business in this state, nor that it is involved in the present inquiry."

Is the instant case a proper one in which to establish that formula by which stock of different values may be computed with equality? We think not. The owners of the no par value stock are not before us. Obviously the creditor is interested because that formula determines the total number of shares, which is the starting point for the ascertainment of the individual liability. But the creditor (the plaintiff in this case) has not presented a record, requiring or upon which the matter can be decided. The pleadings present no issue as to the nonpar value stock. The evidence merely presents the question as to whether or not there was a consideration for this stock, but does not raise any question as to the value of such consideration. Upon the first question the only evidence is contained in the two resolutions, each contradictory of the other. The court evidently believed the recital in the first resolution and found that there was consideration. It was not asked or required to pass upon the value of that consideration. In absence

of any evidence called to our attention to the contrary it may be that the court believed that such consideration was a contribution to the corporate capital equal proportionately to that of other classes of stock.

Obviously, before any formula can be stated as to the relation between various classes in computing the total shares issued, it is essential that some evidence be introduced upon which to predicate that formula.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.