[S. F. No. 17309. In Bank. Dec. 23, 1946.]

BEN PARKER et al., Appellants, v. SHELL OIL COMPANY (a Corporation), Respondent.

Bernal & Bernal and Edward E. Craig. for Appellants.

McCutchen, Thomas, Matthew, Griffiths & Greene and Sherrill Halbert for Respondent.

SCHAUER, J.—On June 7, 1940, plaintiffs instituted this action to recover moneys which allegedly became due to them from defendant oil company during the period from January 15, 1932, to August 1, 1936, while plaintiffs as lessors, sublessees, and agents of defendant operated a Shell service station. Their complaint alleges as a first cause of action that the sum of $3,259.02 is due as the unpaid balance of rent under the terms of plaintiffs' lease of their service station to defendant, and as a "Second Cause of Action" that defendant became indebted to plaintiffs in the sum of $3,259.02 on an open, mutual, current account. At a prior (the first) trial of this action it appeared that the first cause of action was barred by the statute of limitations except as to rental accruing after June 7, 1936 (Code Civ. Proc., § 337, subd. 1). Defendant stipulated that judgment could be entered against it for rent which became due within four years of the date of filing the complaint. For reasons not here material the trial court refused to admit documentary evidence offered by plaintiffs in support of the "Second Cause of Action." Judgment was against plaintiffs on such "Second Cause of Action." Plaintiffs appealed. (*Parker* v. *Shell Oil Co.* (1942), 55 Cal.App.2d 48 [130 P.2d 158].) The District Court of Appeal held that the evidence should have been admitted and reversed the judgment. On that prior appeal defendant contended (p. 55 of 55 Cal.App.2d) that "no prejudice to appellants occurred because the offered documents, as a matter of law, would not constitute an open, mutual, and current account." The District Court of Appeal said, "This contention is predicated on the argument that the account pleaded in the second count is based on the lease pleaded in the first, and that the law will not permit a person, where his claim on express contract is barred by the statute of limitations, to evade the statute by the device of pleading that claim as an open account. That is undoubtedly the law. [Citations which concern book accounts;

the same principle applies to open, mutual, current accounts.] If the proffered evidence should show that appellants' second cause of action is for the rent due under the lease pleaded in the first, these cases would be authority for the proposition that no open account, as required by section 337, subdivision 2, of the Code of Civil Procedure,[*] existed. But the record does not show that."

The second trial resulted in a judgment against plaintiffs as to each alleged cause of action. Plaintiffs again appeal. Before the second trial they amended their first alleged cause of action to aver that by oral agreement the lease was extended to another service station of plaintiffs. Defendant's answer, among other things, as to each alleged cause of action, sets up the defense of the statute of frauds and pleads the bar of the statute of limitations (both Code Civ. Proc., § 339, subd. 1 [oral agreement, two years], and *id.*, § 337, subd. 1 [written agreement, four years].) The statute of limitations applicable upon the theory of the alleged ''Second Cause of Action'' (*id.*, § 337, subd. 2) is not pleaded.

Upon the second trial the issues raised by the special defenses were first tried before a jury. The evidence as to whether the pleading of a mutual account was but an effort to disguise the first alleged cause of action was conflicting. In answer to a special interrogatory the jury found that the ''second cause of action . . . [is not] based solely upon the rent due under the lease pleaded in the first cause of action.'' The trial continued without a jury. The court heard further conflicting evidence and during the course of the trial ruled that there was a mutual, open, current account between the parties but that the rent was not included in such account. But, as hereinafter delineated, the latter ruling was not made as a finding of fact upon conflicting evidence, but rather was based upon an inapplicable principle of law, and there are no findings as to the most vital issues, to which the greater part of the evidence was directed. In this state of the record, the judgment cannot be upheld.

█ Plaintiffs' right to recover upon their alleged second

---

[*] Subdivision 2 of section 337 of the Code of Civil Procedure provides that an action to recover the balance due upon a mutual, open, current account must be commenced within four years from the date the cause of action accrues. Section 344 of the same code provides that a cause of action upon a mutual, open, current account ''is deemed to have accrued from the time of the last item proved in the account on either side.''

cause of action (they do not contend that the judgment is erroneous insofar as the theory of their alleged first cause of action is concerned) is governed by the following general principles: A mutual, open, current account must consist of reciprocal demands. It is not enough, to constitute a mutual account, that there exist debts which could be the subject of setoff; there must be an understanding, express or implied from the nature of the dealings between the parties, that charges on each side are to extinguish *pro tanto* those on the other side, so that there exists but one indivisible liability arising from the series of transactions. (*Norton* v. *Larco* (1866), 30 Cal. 126, 130 [89 Am.Dec. 70]; *Millet* v. *Bradbury* (1895), 109 Cal. 170, 174 [41 P. 865]; *O'Neill* v. *O'Neill* (1920), 45 Cal.App. 772, 775 [188 P. 603]; *Dyer* v. *Minturn* (1920), 47 Cal.App. 1, 4 [189 P. 1046]; 1 Cal.Jur., pp. 143-144; 1 A.L.R. 1057, 1065; 39 A.L.R. 365, 370; 57 A.L.R. 196, 203.) ██ Sums which become due under an express contract (such as rent under a lease) are not ordinarily treated by the parties as items of an open account. (*Hopkins* v. *Orcutt* (1876), 51 Cal. 537, 538; *Connor Live Stock Co.* v. *Fisher* (1927), 32 Ariz. 80 [255 P. 996, 57 A.L.R. 196, 199].) If they are not so considered by the parties, one party cannot evade the bar of the statute of limitations by pleading an open, mutual, current account or book account. (*Parker* v. *Shell Oil Co.* (1942), *supra*, 55 Cal.App.2d 48, 55.) ██ However, rent may by mutual understanding of the parties become an item in an open account; in such a case the cause of action is upon the account, not under the lease. (*Gardner* v. *Rutherford* (1943), 57 Cal.App.2d 874, 886 [136 P.2d 48], and cases there cited.)

So far as it is material here, the arrangement under which plaintiffs operated the Shell service station for defendant was found by the trial court to be as follows: On January 15, 1932, the parties entered into a written "Service Station Lease" by which plaintiffs leased to defendant a described service station; defendant agreed to pay as rent a sum equal to one cent for each gallon of gasoline delivered by defendant to, and sold from, the premises; the rent was "payable in cash or by credit as and when said gasoline was sold or on the 20th day of the calendar month next following the month for which the payment was to be made, as defendant might from time to time elect"; the lease was for a three-year term and thereafter

from year to year until terminated by notice by either party; "said lease was not terminated by either party until after the 1st day of August, 1936." As part of the same transaction the parties, on January 15, 1932, entered into a written "Lease and Consignment Contract" by which defendant, for the term of the above lease, subleased the premises to plaintiffs at a rent of one dollar monthly; plaintiffs were appointed defendant's agents to sell defendant's gasoline delivered by it to the leased premises and to handle defendant's products exclusively; defendant agreed to pay plaintiffs a commission for each gallon of gasoline delivered by defendant and sold by plaintiffs. In March, 1933, plaintiffs acquired another service station and the parties orally agreed that the January 15, 1932, lease should be amended to cover both stations, "on condition that plaintiffs would use defendant's products exclusively" at their new station. Between January 15, 1932, and August 1, 1936, defendant delivered to plaintiffs 490,195 gallons of gasoline.

As previously stated, the evidence as to whether the one cent per gallon rental was understood to be a charge against defendant in a mutual account is conflicting. The very nature of the relation between the parties tends to show that it was. The rent was not in a stated amount payable at stated intervals; it was entirely dependent upon the amount of gasoline delivered by defendant to the premises. The ascertainment of the amount of rent accruing to plaintiffs from defendant during any accounting period (and of the amount due from plaintiffs to defendant for the price of gasoline, and of the amount due from defendant to plaintiffs as commissions) required the keeping of a record showing the amount of gasoline delivered. The lease itself indicates that the parties contemplated that the rent might become an item in a mutual account: it provided that the rent was payable "in cash or *by credit* . . . as defendant might from time to time elect." (Italics added.) Defendant did not pay the rent in the manner provided in the lease. It made several cash payments of rent at irregular intervals, then refused either to pay by cash or to give plaintiffs credit by including the rent in the mutual account. From these matters it would prima facie appear that the parties contemplated that there would be a mutual account with demands of defendant against which the rent could be credited and that, since defendant did not perform by paying cash, the rent *by operation of the express*

*provision of the lease* became a credit to plaintiff whether or not defendant entered it as such in its records.

Plaintiffs introduced in evidence papers evidencing their alleged account: the above mentioned "Service Station Lease" and "Lease and Consignment Contract," and a valise which contains invoices, receipts, and monthly statements prepared by defendant and delivered to plaintiffs. From the papers in the valise it appears that there was a mutual account between the parties; the reciprocal demands included such items, for example, as charges against defendant based on "credit coupons" collected by plaintiffs from retail purchasers of defendant's products, and charges against plaintiffs for dealer's prices of defendant's products bought by plaintiffs. From these papers it further appears that defendant, in making up its monthly statements, did not credit plaintiffs (at least on those statements) with the one cent per gallon rent or with commissions, and did not credit itself with the one dollar per month rental provided for in the "Lease and Consignment Contract."

Plaintiff Della Parker gave the following seemingly conflicting testimony as to what general types of items were included in the account sued upon by plaintiffs:

"Q. . . . Will you tell me what items make up your open mutual and current account? . . . A. The products that I had bought from them. The invoices show that the—— gas of different varieties and different accounts [sic] that I had bought from them. . . .

"Q. Well, do you contend that the Shell Oil Company owes you any money for any oil or any solvents or anything of that sort that you handled? A. No. We had settlements of all of those things. . . . [The alleged indebtedness] is for gas that was bought on those invoices that went through the pumps. . . .

"Q. What did you figure in on that account when you were figuring it up, as you say? A. Well, I had figured up the invoices and took off what they had paid me and what they didn't pay and found the balance. . . .

"Q. Are you talking about gallonage invoices? A. Not only—— no, for everything. I have invoices for everything I ever bought off of them. . . . I segregated all my accounts and the oils and the by-products and the gasoline by itself. . . . And the things that they had paid me for were set aside and

what they hadn't paid me, I set that down and I figured up my gallons, as I said, and took what they had paid me from what I figured the one cent.

"Q. After you got the total gas what did you do next? A. Well, I took my—— all I could remember of the money they had paid me and I wasn't quite sure that I had all the checks, remembered all the checks that they had paid me—— and just subtracted it from the difference. . . .

"Q. Now, Mrs. Parker, name some of the things that went into making up this account besides gasoline? A. Well, there is the lease and there is the rental.

"Q. All right, and what rental is that, the $1.00 per month? A. The $1.00 per month. . . .

"Q. What are the items of the account between you and the Shell Oil Company? A. Of all the products that I had purchased from them during the period of time that I handled their products.

"Q. I see, and was this one cent a gallon rental a portion of that account? A. Yes. . . .

"Q. Mrs. Parker, do you contend that there now remains unpaid any item in this account other than the rent item? . . . A. No—— that is what I am suing for.

"Q. And that is all, is it not? A. That is right.

"Q. So far as the kerosene and the oil and the cleaning fluid and the gasoline and all those items are concerned, those have been settled between you and the Shell Oil Company? A. Yes, sir."

(Of course, if there was an open, mutual, current account which included rent and other items, a settlement of some disputed items or a payment by one party of a sum corresponding in amount to certain charges against him would not destroy the account. For example, in *Mercantile Trust Co.* v. *Doe* (1914), 26 Cal.App. 246, 251 [146 P. 692], defendant made two payments which exactly corresponded in amount to the first two charges against him in an open book account. The District Court of Appeal held that this did not compel the inference that each charge was a separate item or destroy the openness and continuity of the account. And in *Brown & Manzanares Co.* v. *Gise* (1907), 14 N.M. 282, 285 [91 P. 716], the parties to an open, mutual, current account at the end of each fiscal year stated the account, then continued their dealings. The New Mexico Supreme Court held, relying upon cases from other states, that the balance due on account stated

simply became an item in the succeeding open, mutual, current account.)

At the close of evidence the trial court stated that the items shown on the papers in the valise (including "the kerosene and the oil and the cleaning fluid and the gasoline" which Mrs. Parker testified "have been settled"), and such items alone, are included in an open, mutual, current account between the parties. At the request of the trial court accountants for each party prepared an "Account . . . compiled from documents contained in Plaintiffs' Exhibit 3 [the valise]." The compilation prepared by plaintiffs' accountant includes a credit to plaintiffs for the one cent per gallon rent, a credit which does not appear solely from the papers in the valise. Such compilation depends upon those papers to show the gallonage of gasoline delivered and upon the lease to show the agreement to pay one cent a gallon as rent. (The lease further shows, it will be remembered, the agreement to enter the rent as a "credit" to plaintiffs if not paid in cash by defendant at stated intervals.) Defendant conceded the correctness of plaintiffs' computation except insofar as it includes this credit. The trial court reiterated its ruling that "I am not going to allow the rent." The computation, not allowing credit to plaintiffs for rent, shows a balance due to defendant, which it does not seek to recover.

However, the findings do not meet the issues presented by the pleadings and at the trial. There is no finding that defendant ever paid any rent. There is a finding that it paid "a sum in excess of $1,642.93 on account of the sums due under the terms of said Service Station Lease and said Lease and Consignment Contract," but there is no finding as to how much the sum paid exceeded $1,642.93 or whether it was paid as rent, commission, or on account of any other particular claim. There is no finding that defendant ever credited any rent to plaintiffs, as the lease provided it should do if it did not pay the rent in cash. If (as found by the court) defendant promised to pay to plaintiffs as rent one cent per gallon of gasoline delivered, and if (as found by the court) defendant delivered 490,195 gallons of gasoline, then, assuming that defendant paid $1,642.94 as rent (which amount is all that the above quoted finding can properly be said to encompass), it is obvious that sums became due to plaintiffs either as rent or, if the rent became a part of a mutual account, as the bal-

ance due on such account. And the trial court found "That it is not true that the alleged second cause of action [averring a mutual account] . . . did not in part accrue or arise within four years immediately preceding the commencement of this action. . . ."

There is no direct finding as to whether an open, mutual, current account ever existed, and no finding whatsoever as to whether the rent charges became part of such account if it did exist. Whether there is a mutual account and whether the rent was an item in the account are the most vigorously disputed questions in this case, the questions to which the greater part of the evidence at the trial and the argument on appeal have been directed. Since the evidence is conflicting, these questions are issues of fact. (*Copriviza* v. *Rilovich* (1906), 4 Cal.App. 26, 30 [87 P. 398], and other cases cited in Ann. Cas. 1913D, 820, existence of mutual account; *Foothill D. Co.* v. *Wallace Ranch W. Co.* (1938), 25 Cal.App.2d 555, 566 [78 P.2d 215], book account; *Searles* v. *Maritime Federation* (1938), 28 Cal.App.2d 661, 664 [83 P.2d 100] ; and *Kinkle* v. *Fruit Growers Supply Co.* (1944), 63 Cal.App.2d 102, 114 [146 P.2d 8], account stated.) ▮▮▮ The failure to find on all material issues raised by the pleadings and evidence is ground for reversal, unless findings have been waived. (*Fairchild* v. *Raines* (1944), 24 Cal.2d 818, 830 [151 P.2d 260], and cases there cited; 2 Cal.Jur., p. 1032.)

▮▮▮ The trial court did find "That it is not true that within four years last past the defendant became indebted to plaintiffs, or either of them, upon a balance due on an open, mutual and current account in the sum of $3,259.02, or in any amount whatsoever, which now remains unpaid." Where a cause is at issue upon defendant's denial of the allegations of a common count it is ordinarily true that a finding in the language of the common· count, that is, a finding upon the ultimate fact, necessarily concludes the whole controversy and specific findings are not necessary. (*Preston* v. *Dunn* (1917), 33 Cal.App. 747, 749 [166 P. 603] ; *Jacuzzi* v. *Jacuzzi* (1918), 38 Cal.App. 533, 534 [176 P. 872] ; *Tower* v. *Wilson* (1919), 45 Cal.App. 123, 133 [188 P. 87] ; *Wood* v. *Mesmer* (1920), 46 Cal.App. 257, 259 [189 P. 134].) But here it is apparent that the trial court's failure to find specifically upon the most vigorously disputed issue in the case—whether the rent became a part of the account—was due to a misapprehension of law. Its

oral ruling that "I am not going to allow the rent" was made as a ruling of law based upon the so-called "parol evidence rule," not as a finding of fact. Defendant relies upon cases which hold that items cannot be added to a book account, or a charge against one person shown to be a charge against another, by extrinsic evidence. (*Wright* v. *Loaiza* (1918), 177 Cal. 605, 607 [171 P. 311]; *Edwards* v. *California S. P. Corp.* (1930), 104 Cal.App. 715, 719-720 [286 P. 733]; *Egan* v. *Bishop* (1935), 8 Cal.App.2d 119, 126 [47 P.2d 500].) The trial court accepted defendant's argument based upon the principle of these cases and ruled that plaintiffs could not "go outside of the evidence contained in the valise"; that the rent was not included in the account because it "is a derivative figure . . . you can't get that figure entirely from the slips in the box." But the rule as to book accounts (which must be written in a book) has no application to mutual, open, current accounts (which need not be kept in writing). "For a mutual, open, and current account it is not necessary that the account be kept in any particular form, and it is immaterial which party keeps the account (*Carter* v. *Canty,* 181 Cal. 749, 754 [186 P. 346]), nor is it necessary that there be any written entry of the various charges on the account (*Millet* v. *Bradbury,* 109 Cal. 170, 173 [41 P. 865].)" (*Schwindt* v. *Billiwhack Stock Farms* (1941), 45 Cal.App.2d 208, 210 [113 P.2d 902].) Even an unliquidated claim based on quantum meruit, it has been held, can be an item in a mutual, open, current account. (*Pedley* v. *Doyle* (1918), 177 Cal. 284, 287 [170 P. 602]; *Culver* v. *Newhart* (1912), 18 Cal.App. 614, 623 [123 P. 975].) It is apparent that here the trial court did not decide whether *in fact* the items shown on "the slips in the box" comprised the entire account because it accepted the view that as a matter *of law* they must. Since the evidence on the issue is conflicting the question must be resolved as an issue of fact in the light of the legal principles hereinabove enunciated.

 Defendant contends that, regardless of developments at the trial, plaintiffs cannot recover because their bill of particulars, which is regarded as an amplification of the complaint, is defective. The bill of particulars does not set forth a mutual account. It simply lists the number of gallons of gasoline delivered, multiplies by one cent, shows the result as a charge against defendant, and credits defendant with cash

payments of $1,642.93, described as "The credit of $1,642.93 referred to in the first cause of action." Defendant relies upon cases which hold that the admissibility of evidence and plaintiffs' right to recover are limited by the allegations of the bill of particulars. (E. g., *Millet* v. *Bradbury* (1895), *supra,* 109 Cal. 170, 172; *Treadwell* v. *Nickel* (1924), 194 Cal. 243, 263 [228 P. 25]; *Ames* v. *Bell* (1907), 5 Cal.App. 1, 4 [89 P. 619]; *Gage* v. *Billing* (1910), 12 Cal.App. 688, 692 [108 P. 664]; *Kurokawa* v. *Saroyan* (1928), 95 Cal.App. 772, 775 [273 P. 613]; *Robertson* v. *Bonelli* (1944), 65 Cal.App.2d 704, 705 [151 P.2d 307].) However, the record does not show that defendant before trial moved for and obtained an order excluding the evidence to which it now objects; and at the trial it did not object to the introduction of evidence of demands of both parties on the ground that they were not set forth in the bill of particulars. Therefore, defendant cannot now complain of the admission of such evidence. (1 Cal.Jur., p. 161.) ■ Nor can defendant now object that the bill of particulars does not set forth a mutual account, for at the trial defendant, while consistently maintaining that there was no mutual account, did not object to the introduction of evidence tending to prove such an account, and the trial proceeded on the theory that the existence of a mutual account was in issue. (2 Cal.Jur., p. 239.)

■ Defendant urges that the judgment can be upheld on the basis of the finding (supported by uncontradicted evidence) "that in and by said Lease and Consignment Contract . . . it was provided, among other things, that plaintiffs waive any claim against defendant as to quantity, quality, price, commissions, credits or other payments or settlements concerning any delivery or product thereunder, unless said claim was made by plaintiffs to defendant in writing within forty-eight hours after said delivery, and that no such written claim was made by plaintiffs to defendant in writing within forty-eight hours after any delivery or at all." However, it appears that the parties did not construe or apply the quoted provision as governing any such issue as that which seems controlling here; i. e., whether the rental items were included as elements of the mutual account; and it is obvious that the trial court did not base its decision that plaintiffs are not entitled to recover upon the quoted finding; it permitted other items which were incorrectly shown upon the vouchers and statements delivered to plaintiffs and which plaintiffs did not protest in writing, to

be included in the recapitulation of account prepared by plaintiffs' accountant.

For the reasons above stated, the judgment is reversed and the cause remanded for a new trial.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Respondent's petition for a rehearing was denied January 20, 1947, and opinion was modified to read as above. Edmonds, J., voted for a rehearing.