[Civ. No. 16247. First Dist., Div. Two. May 18, 1955.]

J. W. BURCHELL, Appellant, v. EDNA V. ROHNERT, Respondent.

Jones, Lane, Weaver & Daley for Appellant.

Wyckoff, Parker, Boyle & Pope for Respondent.

DRAPER, J. pro tem.*—Plaintiff appeals from judgment for defendant following trial without a jury. As a result of rulings upon demurrers, the action was tried only against defendant Edna V. Rohnert, and this appeal is prosecuted only against her.

The action was tried upon the second amended complaint. Its first count alleges that appellant was employed by respondent from late 1933 through 1950 under an oral agreement by which he was to be paid a salary and a share of the profits of the business. It sets up in detail the asserted oral agreement for computation and distribution of profits, and alleges that respondent, contrary to the agreement, charged

---

*Assigned by Chairman of Judicial Council.

improper operating expenses against the business and improperly reduced appellant's share of profits. The second cause of action is a common count alleging respondent's indebtedness to appellant "on an open book account," and the third is a common count for "the balance due upon a mutual, open and current account." Each count alleges that a sum "in excess of $120,000" is due to appellant. The prayer is for an accounting of profits and for judgment for the amount found due.

Waldo Rohnert, for many years until his death, owned and operated a business of growing and marketing seeds, known as Rohnert Seed Company. Appellant became an employee of this business about 1914.

Waldo Rohnert died November 18, 1933. His wife, respondent Edna V. Rohnert, succeeded to his ownership of the business. At that time the senior employees of the business were appellant, who was in charge of farming operations and also made selling trips, and Joseph A. Garcia, who was in charge of the office.

Mr. Rohnert, in his lifetime, had established a bonus plan for employees who had been with the firm for five years or more.

His widow and her son consulted with appellant, Mr. Garcia and other experienced employees, as to the advisability of continuing the business. They determined to do so, and at the same time orally agreed to employ these men at agreed monthly salaries and to continue the bonus plan.

The oral agreement for profit-sharing provided that operating expenses to be deducted in determining annual net profits should include allowance to the owner for assets furnished to the business by her.

The amount remaining each year, after deduction of operating expenses, including the allowance to respondent owner, was to be distributed half to the owner and half to those employees who had worked for the business for five years or more.

From the half to be paid to employees, a bonus first would be paid to those employed in nonexecutive positions (referred to by the parties as "wage-earners"), in an amount to be determined by respondent. The remaining share of the employees' bonus was to be divided among executive employees in such proportions as those employees might mutually agree upon, subject, however, to approval and ultimate determination by respondent. It was agreed that, as other employees

reached the seniority requisite for participation, they would share in the 50 per cent of annual profits distributable as bonuses. It was also contemplated that the shares of the several executive employees would be adjusted from time to time as additional employees in that class were added, or as duties and responsibilities changed. Each employee's share was to be credited to his account annually, and it was agreed that any balance remaining in any such account would bear interest, to be paid by respondent, at the rate of 4 per cent per year.

For three or four years before his death, Waldo Rohnert had experimented with the growing of seeds on lands near Cotati, in Sonoma County, and had contracted to purchase some such lands. Following his death, when she determined to continue the seed business, respondent elected to continue the Cotati experiments. She and her two children executed agreements May 22, 1934, to complete the purchase previously negotiated by Waldo Rohnert, and began negotiations which shortly led to contracts for purchase of additional lands in that area.

There was no certainty that these parties would be able to complete the purchases. Accordingly, at about the time the first Cotati agreements were executed in May of 1934, respondent and her employees agreed that the annual total of payments on account of principal, interest, and taxes on the several Cotati purchase agreements should be charged as operating expenses in determining the profit which was to be the basis for the bonus to employees. It was also agreed that an adjustment of these Cotati charges would be made when the purchases of these lands were completed, and that the amount by which this adjustment should increase bonuses would be paid to the employees at that time.

No bonuses were paid under the profit-sharing agreement until about the time of distribution of the estate of Waldo Rohnert, deceased. On January 15, 1936, respondent signed a notice prepared by the executive employees which specified the amounts to be paid to the nine participating employees as bonuses for 1933 and 1934, appellant being the largest sharer with distribution of $16,574.72, amounting to 36 per cent of the executive employees' fund. The same notice stated that "For the year 1935 and until further notice, distribution of bonuses will be made on the following basis:

"1—J. W. Burchell ..................... 37½%
"2—J. A. Garcia ..................... 37½%

"3—C. C. Carley ...................... 10 %
"4—T. A. Gleason ..................... 6 %
"5—A. Pera .......................... 6 %
"Other employees—a percentage of salary."

(It will be noted that the above figures total only 97 per cent. It is not disputed that the 1935 shares of the last three named were increased by 1 per cent each, and that the intent at all times was to first deduct the bonuses of wage earners, and to distribute 100 per cent of the remainder among the executive employees.)

This notice also restated the provision that an employee must have worked five years to become eligible for bonus participation.

In 13 of the 18 years from 1933 through 1950, bonuses were credited to appellant, in amounts ranging from $3,944.46 in 1936 to $160,992.86 in 1943. The total of bonuses paid him in the 18 years was $482,399. Additionally, he received interest upon bonus credits left by him with the company in the sum of $23,733.08. Appellant received 37½ per cent of the executive employees' share of the bonus from 1935 through 1937 and in 1939. In 1938 there was no profit and thus no bonus distribution. In 1940 appellant's proportion was reduced to 34 per cent, and further reductions in his percentage share were made thereafter.

Each year, when the bonus calculations were made, written notice was given to each employee of the amount credited to him. Full records, including detailed annual profit and loss statements and annual calculations of bonuses due each employee were maintained and were at all times fully known to appellant, who thus knew both the amount and the percentage share of his bonus each year. Also, the amount credited to him and his account balance were at all times shown on the ledger account carried in his name, which was available and known to him at all times.

He made no protest to respondent as to amount or percentage, with one exception.

Final payment on the Cotati land purchases was made February 10, 1943, and the adjustment of bonuses (reduction of operating expenses for the 10-year period, and resulting increase of bonus) contemplated by the oral agreement of May, 1934 became due. Soon thereafter, appellant demanded this adjustment of respondent, who refused his demand.

Appellant's principal claim in the present action is for the amount of this adjustment. The trial court found that

the adjustment called for by the agreement was to consist in reduction of the Cotati costs to reasonable rental value of the Cotati lands. On this basis, $7,783.17 would be due appellant. Appellant disputes this finding, and contends that the true amount due him on the adjustment is $26,870.36.

But the trial court also found that all three causes of action were based upon the same transactions; that there was no book account or mutual, open and current account between the parties save the book account kept by respondent's office, and that nothing was due appellant upon that account. Appellant's claim upon the Cotati adjustment having been made and denied almost eight years before filing of the action, the court determined that the claim was barred by the statute of limitations.

Appellant argues at length the admitted rule that the statute of limitations does not run piecemeal against the items of an open book account or a mutual, open and current account, but only runs from the date of the last entry. His contention breaks down when he seeks to apply this established rule to the facts of his case.

His claim for adjustment of the charges for the Cotati property, and consequent increase of his bonus, is one for breach of an express oral agreement. But performance of this agreement fell due early in 1943. Appellant knew of this due date, and demanded performance in February, 1943. His demand was rejected promptly. Both because performance was then due, and because of the demand and refusal, his time to sue for breach of the contract began to run then, and clearly had ended long before this action was filed January 2, 1951.

But, says appellant, the account kept by respondent operates to defer the commencement of the statutory period until the date of the last item in the account (which in fact is after the date complaint was filed).

The difficulty with this argument is that appellant cannot rely upon the account and at the same time disavow it.

To secure the benefit of the statutory period for which he contends, appellant must show that his is "An action to recover (1) upon a book account . . .; . . . (3) a balance due upon a mutual, open and current account." (Code Civ. Proc. § 337, subd. 2.)

But appellant, in fact, is not relying upon the account for his claimed recovery. The account admittedly shows nothing

whatever due him. (The sum of $1,614.49, shown by the books to have been due when complaint was filed January 2, 1951, was in fact paid to and accepted by him January 29, 1951.) Nor does the account contain any item or entry even remotely referring to any adjustment of the Cotati charges. The trial court found, upon ample evidence, that this "J. W. Burchell Ledger account" is the only account between the parties.

Appellant really contends that because there is an account between the parties which makes no mention of the amount he seeks, he is relieved of the limitation otherwise applicable to his action. More baldly stated, his contention is that the statute does not run piecemeal against items which are *not* in the account. Thus stated, it becomes clear that his position is wholly untenable.

*Egan* v. *Bishop*, 8 Cal.App.2d 119, 126 [47 P.2d 500], establishes the rule. There defendant appealed from a judgment against him upon an open book account, which included amounts not entered in the books. Although affirming the judgment as to amounts covered by entries in the books, the court held that the other claims, since they "were not contained in the book account," were barred by the statute of limitations. Amount of the judgment was reduced accordingly. *Wright* v. *Loaiza,* 177 Cal. 605 [171 P. 311] and *Edwards* v. *California Sweet Potato Corp.,* 104 Cal.App. 715 [286 P. 733], hold that an account carried in the books against one person cannot be enforced against another.

Appellant relies upon *Parker* v. *Shell Oil Co.,* 29 Cal.2d 503 [175 P.2d 838], for a contrary rule. But the Parker case does not so hold. The court does observe that the Egan, Wright and Edwards cases dealt with book accounts, and that a different rule applies to mutual, open and current accounts. The opinion points out that whether a mutual account existed and whether the disputed rent was an item in that account were, the evidence being conflicting, issues of fact. There was no finding upon either of these issues, and judgment was reversed and new trial ordered because of the lack of such findings.

In the case at bar the trial court specifically found that "No mutual, open and current account ever existed between plaintiff and defendant" and that the only account which ever did exist between them was the book account kept by defendant. This account is set forth, in summary, in the findings. It contains no reference, direct or indirect, to the adjustment

which appellant now seeks. These findings are amply supported. In fact, the record is devoid of any evidence in any way tending to show that either party ever had any account, written or oral, mutual or individual, open or closed, which included the claim appellant here asserts.

Thus the Parker case, whatever might be its application otherwise, can have no application to the facts of the case at bar. Here the finding which was lacking in *Parker* v. *Shell Oil Co., supra,* has been made and is adverse to appellant.

*Pedley* v. *Doyle,* 177 Cal. 284 [170 P. 602], and *Schwindt* v. *Billiwhack Stock Farms, Ltd.,* 45 Cal.App.2d 208 [113 P.2d 902], are cited by appellant for the same point. Both are distinguishable from the present case upon other grounds but, in any view, they can have no application here since each of those actions is upon a mutual, open and current account, which is specifically found not to exist here.

Appellant's claim upon the ''Cotati adjustment'' is barred by the statute of limitations. This is not a case where a party being charged upon a book account defends by disputing its accuracy or by going outside the account to establish a counterclaim. Here appellant is the plaintiff. He has adopted the account as the very essence of his claim in order to avoid the bar of the statute of limitations.

Appellant also asserts error in the failure of the trial court to find that he was entitled to 37½ per cent of the bonus fund distributable to executive employees from 1940 through 1950. This claim is based upon the notice of January 15, 1936, quoted above, which states the bonus percentages ''For the year 1935 and until further notice.'' Appellant's share, as stated in the notice, was 37½ per cent. Except for the year 1938, when there was no profit and no bonuses were paid, this share was paid to him through 1939. In 1940 he received 34 per cent, 1941 through 1943 33 per cent, and in 1944 32½ per cent. Other reductions followed.

Consideration of this contention requires reference to the agreement for payment of bonuses. As found by the trial court, this agreement called for distribution of the share of the executive employees among them in such proportions as those employees might agree upon among themselves each year, subject, however, to approval and ultimate determination by defendant. The agreement, as found, also provided that additional employees should become participants

in the fund and that the shares of the participants should be adjusted accordingly.

Appellant does not attack these findings, which are fully supported by the evidence, and which are conclusive upon this point. It is obvious that as the number of employees participating in the bonus plan increased, the percentages paid to previous participants would decrease, and that this was clearly contemplated in the agreement. It is clear that 100 per cent is all, and leaves no room for flexibility upward. Appellant, in his testimony, readily conceded that the plan had, from the outset, contemplated addition to the bonus group of employees who reached the five year qualification. Neither appellant nor his counsel has been able to explain how such a provision can be reconciled with continuing fixed percentages in the original group of participants.

The notice dated January 15, 1936, is not the contract between the parties, nor is it claimed to be more than some evidence of it. The agreement in fact entered into, as found by the court, completely negatives the idea of payment to appellant of any continuing fixed percentage of the total bonus fund. Thus appellant's complaint is unfounded, regardless of whether there were annual accounts stated.

Without in any way questioning these findings which seem fatal to his contention, appellant directs his attack on this issue solely to the court's finding that there was an account stated between the parties each year, and that appellant accepted the bonus credit each year in full satisfaction of his claim, with the single exception that he did not accept any payment in full satisfaction of his claims on the Cotati adjustment.

Since the findings, supported by the evidence, show that appellant received percentages determined in full accordance with the oral bonus agreement, it is not necessary to determine whether the finding of annual accounts stated is sound. We point out, however, that the record shows that appellant questioned his percentage only once. That concerned the 1940 reduction. His complaint then was made to his fellow executive employee, Mr. Garcia, who appears to have had much to do with determining the distribution of the executives' share among them. After brief discussion, appellant said to Garcia "if that's it, I guess it's all right, Joe." Appellant testified that he also discussed the 1940 percentage with respondent's son, but the latter testified to the contrary. No protest to respondent is claimed. Thus there was, at most, one

protest about one year's reduction, followed immediately by acquiescence, and no complaint whatever as to any other year, although appellant always was fully informed as to the distributions of the bonus. The court's finding that there were annual accounts stated is supported.

 Appellant argues that the court erred in finding that the Cotati adjustment was to be "paid" when purchase of the Cotati land was completed. He contends that the agreement was to "credit" or to "adjust" his account at that time. It is immaterial whether he was to be "paid" or "credited." Neither was done. Appellant complained of the omission and demanded performance. His demand was refused. Hence the statute of limitations began to run on this claim in February of 1943, as more fully pointed out earlier in this opinion.

Appellant also attacks the finding that reasonable rental value of the Cotati lands is the proper basis for the Cotati adjustment. The court received evidence of the reasonable rental value of these lands, determined that the Cotati charges should be reduced to that amount and found that, save for the defense of the statute of limitations, $7,783.17 would be due appellant on this item. Appellant asserts that, under the agreement, the deduction for use of the Cotati property was to be 6 per cent annually upon the investment, and that if the adjustment were made on this basis, the sum due him would be $26,870.36.

In view of our determination as to the statute of limitations, this issue is not material. We point out, however, that there is no evidence that the oral agreement of May 1934 made any reference whatever to details of the future Cotati adjustment. It might be suggested that such detail could be found from the pattern of like deductions for other lands used in the business. But there is no fixed pattern. The "Home Ranch" at Hollister was compensated for, in the bonus computations, at a specified rental value. Use of the Walnut Grove ranch was charged at 6 per cent of book value. There was no other real estate. Thus to assume that use of the Cotati lands was to be charged for at the same rate as the other lands is of no aid. There were two other parcels of land, charged for at differing rates which cannot be reconciled. It is true that there is no evidence of direct agreement to support the finding that reasonable rental value was to be charged for the Cotati lands. But this is not helpful to appellant, for there is an equal lack of evidence to support his contention

that 6 per cent on investment was to be charged for this land. The true fact appears to be that, unless reasonable rental value is implied as a term of the agreement, there is no evidence of any basis of adjustment save one too vague to be enforced.

In any event, our conclusion as to the operation of the statute of limitations against this claim makes the issue moot.

The judgment is affirmed.

Nourse, P. J., and Kaufman, J., concurred.